Samuel A. Spiegel, J.
On October 12, 1972, Captain Robert Colangelo of the Organized Crime Control Bureau, received a telephone call from Jo Anne Johnson, San Juan telephone operator, No. 621. She stated that, while placing a call for a man named “Sierra” from a public phone booth in Puerto Rico to New York City, she overheard a conversation relating to a shipment of narcotics to New York City. She heard this inadvertently, while she stayed on the phone to make sure the overseas call went through and that a proper connection was made.
After this conversation was over she called the phone booth and reached the next caller who gave her a physical description of the man who had just left the booth. He was identified as a white man, wearing glasses and speaking English with a Spanish accent. The New York City party answering the call had no accent. She heard Mr. Sierra state that he had sent two packages of “ H ” to New York. The party in New York was upset that one of the packages was mixed with salt and sugar. Mr. Sierra said he would fly to New York tomorrow.
She reported this to Captain Colangelo who called the phone operator back and confirmed that she was really the overseas operator who had spoken to him. The telephone number called by Sierra was found to be listed to T. Swienc at Apt. 8J, 77 Seventh Avenue, New York City, who had a prior narcotics arrest. This information was conveyed to the Narcotics Division of the New York City Police Department.
Upon investigation, the Port Authority Police at Kennedy Airport were advised that an Angel Sierra had booked a flight from Puerto Rico on American Airlines and that the flight was due in New York at 3:05 a.m. on October 13,1972.
Sergeant John Quinlan of the Narcotics Division called Miss Johnson in Puerto Rico for further information but she told him she could not talk but that everything she had said before was true.
In the meantime other Narcotics Division officers set up an observation post on the roof of 64-66 Seventh Avenue, which faced 77 Seventh Avenue.
At 3:00 a.m. Angel Sierra arrived at Kennedy Airport. His taxi was followed but lost in traffic. He arrived at 77 Seventh Avenue at 3:30 a.m.
At that address Patrolman Richard Farry observed Sierra talking to a man he had identified as Theodore Swienc from criminal identification photographs. Sierra held a medium-sized white package which he was switching from hand to hand. Based on his training and experience as a narcotics police officer, *334 the dimensions of the package, the manner in which Sierra handled the package and the telephone call, Patrolman Farry believed that there were narcotics in the package.
Based on the foregoing information a search warrant was signed by Justice Irving Lang at 7:45 a.m. on October 13, 1972, and executed at 1:30 p.m. A search revealed about 27 ounces of cocaine and assorted other narcotics paraphernalia. Deputy Inspector .Colangelo, Sergeant Quinlan and Patrolman Farry testified at the suppression hearing. The defendants offered no witnesses. The contentions of the defendant are:
1. That the telephone conversation overheard by the phone operator in Puerto Rico was illegally obtained and unconstitutional.
2. The search and seizure violated the Fourth Amendment to the Constitution.
3. That the search warrant was illegally obtained.
4. The evidence which resulted from the intercepted phone call was tainted and should be .set aside as inadmissible.
5. That the search warrant issued by Judge Lang was illegal and the contraband should be precluded from admissibility in evidence.
6. That the police violated section 605 of the Communications Act (U. S. Code, tit. 47, § 605) in using the intercepted conversation.
7. Section 605 was violated by Jo Anne Johnson, the phone operator.
8. That the United States Code (tit. 18, §§ 2511, 2515) was violated by the police.
9. That the inadequate supporting affidavits for the search warrant mandate the suppression of all evidence.
The contentions of the People are:
1. There was probable cause to issue the search warrant. This could be established by .showing a separate check of informant’s tale and the underlying circumstances as to how the informant came by. her information demonstrating sufficient probability of credibility to allow the search. (People v. Hendricks, 25 N Y 2d 129.) (See Aguilar v. Texas, 378 U. S. 108 [1964] and others.) Thus the authorities’ independent check of informer’s story plus their independent observations provide the probable cause herein.
2. That hearsay evidence is admissible on-an issue of probable cause in an affidavit for search warrant.
3. This is not a deliberate eavesdrop, but an inadvertent listening which came about when the telephone operator in the *335 normal course of employment waited for the telephone connection to he made which creates an exemption from criminal penalties. Informant by this unintentional overhearing which was obtained during the course and scope of her employment did not violate either State or Federal law.
4. There was no violation of section -605 by disclosure. In the Hannah and Beckley (infra) cases the courts have upheld disclosure of other crimes revealed while monitoring by company employees for customer frauds, employee frauds or illegal long distance calls.
5. There was no violation by the Police Department.
6. There were adequate grounds stated in the supporting affidavit for the search warrant.
One of the principal issues herein is:
Did Jo Anne Johnson legally intercept the phone conversation in Puerto Rico? If she did not then the evidence obtained herein was in violation of the Fourth Amendment rights of the defendants against unlawful search and seizure and may not be used against them. On the other hand if it was legal then the conversation is properly useable.
The overseas phone operator concededly was neither an agent of the police nor had she ever been an informer. As a matter of fact she indicated that she placed her job in jeopardy by reporting the overheard phone conversation to the police. She did what she felt she was motivated to do as a good citizen with a decent sense of obligation. Should she have ignored this conversation? Should she have neglected to report it to the police? Should the police have ignored her phone call? Suppose it were a conversation to commit a murder instead of to deliver heroin at 3:00 a.m. Should her report have been ignored by police because she was not a registered informer or had no search warrant?
Further, this was not an interception by any mechanical instrument nor by an unauthorized person. She was obliged to verify that the parties were connected and that the line was clear. She was on the phone when she accidently overheard the discussion of the commission of an illegal act. This was in the line of duty and in the normal course of her employment. She then reported it forthwith to the police.
Two separate illegal acts are charged by the phone operator. One is the eavesdropping of the conversation, and secondly the reporting of it to the police.
The police verified she was a real phone operator and confirmed the information she had reported previously. The police *336 followed her leads and pursued this matter diligently. Everything checked out and fell into place. The reservations on the plane, the previous narcotics involvement of one of the principals to the conversation, the subsequent arrival and rendezvous of the conversants in the apartment to which the call was made. The observance of heroin in the apartment by the police coincided with the other details.
The information of Miss Johnson, the phone operator proved to be reliable and accurate in every detail. It would be the height of ridicule to attempt to classify her perfect report as mere “rumor”. The conversation she reported to the police was neither unlawful nor unreliable.
All the facts and circumstances contained in the aEdavit in support of a search justified Justice Irving Lang to issue the warrant. (Hanna v. United States, 404 F. 2d 405 [1968]; Coolidge v. New Hampshire, 403 U. S. 443 [1971]; United States v. Beckley, 259 F. Supp. 567 [1965].) Section 250.00 of the Penal Law excludes normal operation of a telephone from the definition of “wiretapping.” (See, also, People v. Munger, 24 N Y 2d 445; Draper v. United States, 358 U. S. 307; and People v. Schnitzler, 18 N Y 2d 457.)
The use of hearsay conversation in the aEdavit for a search warrant was valid. (People v. Hendricks, 25 N Y 2d 129; Jones v. United States, 362 U. S. 257; Aguilar v. Texas, 378 U. S. 108, supra, followed in Spinelli v. United States, 393 U. S. 410.)
Once the interception was legal in its inception then the phone operator’s disclosure of the accidently overheard conversation was likewise legal.
The burden of proof to suppress has not been met by the defendants. All defendants’ motions are denied.