UNITED STATES of America,
Plaintiff-Appellee,

v.

Patrick Joseph SAVAGE,
Defendant-Appellant.

No. 77–5085.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1977.

H. Jay Stevens, Orlando, Fla. (court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., William F. Duane, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

A jury convicted defendant Patrick Joseph Savage on January 6, 1977 of knowingly possessing approximately $25,120 in counterfeit twenty-dollar Federal Reserve Notes in violation of 18 U.S.C. §§ 2 and 472.[1] The district court sentenced him to three years' imprisonment and he now appeals, alleging two points of error. First, he contends that the district court erred in failing to suppress as illegal evidence a telephone conversation between himself and a girl friend that a motel switchboard opera-tor overheard and reported to the police, allegedly in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. Second, he contends that the district court erred in failing to suppress evidence resulting from a search by the police of his motel room because the police allegedly did not have probable cause to arrest him. We find Savage's contentions unpersuasive and affirm his conviction.

## I. The Facts

On Thanksgiving Day, November 25, 1976, between 9 and 9:30 p. m., Thomas H. Barbee, a delivery man for Crusty's Pizza in Daytona Beach, Florida, delivered two pizzas to Room 306 of the Ramada Inn in Daytona Beach. Three persons were in the room—Savage, another man, and a young woman. Savage, to whom the room was registered, paid for the pizzas with a twenty-dollar bill and Barbee left. Several hours later, at approximately 1 a. m. on November 26, Barbee became suspicious of the twenty-dollar bill received from Savage and called the Daytona Beach Police Department.[2] Officer Patrick James Stack answered the call. He and Barbee decided that the bill probably was counterfeit, but, desiring a third opinion, contacted Sergeant Adkins, also of the Daytona Beach Police Department. Sergeant Adkins agreed, but suggested that the occupants of Room 306 could be tourists who had unknowingly been passed the bill and then, also unknowingly, had themselves passed it to Barbee. The two police officers and Barbee returned to Room 306 to request that the bill be replaced. It was then approximately 2 a. m. The young female occupant of the room, now alone, refused to let them in, stating that the man who had paid for the pizzas was out to buy cigarettes. The trio left to search for him by automobile, which proved unsuccessful.

---

1. A grand jury also charged Savage with uttering a counterfeit twenty-dollar Federal Reserve Note in violation of 18 U.S.C. §§ 2 and 472. The jury found him not guilty.

2. Barbee had received only two twenty-dollar bills that night—the first from Savage and the second from a regular customer on his final delivery of the evening.

Barbee and Officer Stack, who were together in one car, returned to the Ramada Inn. While they were in the lobby, Mrs. Oda Dye, the motel switchboard operator, called Stack over and related to him a conversation she had overheard on the motel switchboard. Between 1 and 2 a. m., Mrs. Dye had taken an incoming call for Room 306. After putting the call through, she remained on the line to listen for approximately ten seconds. She heard a female, sounding distraught, answer the telephone and say: "You had better get over here. The pizza man is here. The money you gave him was no good. The police are here. All the pizza man wants is his nine dollars." The male caller then said: "That black bag under, beneath or by the bed . . . ." At that point Mrs. Dye disconnected her circuit. Shortly after providing this information to Officer Stack, Mrs. Dye took a second incoming call for Room 306. She also listened to this conversation, apparently after some encouragement from Stack. She heard the male caller ask the female who took the call "if they found anything yet." Mrs. Dye then gave her operator's headset to Stack, who heard additional portions of the conversation.

Meanwhile, Barbee, on instructions from Officer Stack, had stationed himself in the Ramada Inn parking lot where he could observe the balcony of Room 306. He saw defendant Savage returning to the room. Barbee went to the room, found the door open, and entered without objection from the occupants. Shortly thereafter, Officer Stack, Sergeant Adkins, and two other policemen arrived, and, without warrants, arrested Savage and his girl friend.[3] Both were given *Miranda* warnings.[4] A search of the room produced seventy counterfeit twenty-dollar bills, located in the pocket of a shirt. A later search of the room at approximately noon on November 26, to which the motel management consented,[5] produced a suitcase containing a handgun, drug paraphernalia, and approximately $23,000 in counterfeit twenty-dollar notes.

## II. *The Telephone Intercept*

Savage's first contention—that Mrs. Dye's first telephone intercept was illegal and should have been suppressed—causes us to construe Title III of the Omnibus Crime Control and Safe Streets Act of 1968. That Title provides in part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication; [or]

 . . . . .

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection . . .

 . . . . .

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2511(1)(a) and (c). 18 U.S.C. § 2515 further provides:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

---

**3.** The third occupant of the room, a male, was not arrested and still remains at large.

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** Savage automatically relinquished possession of Room 306 on November 26 at 11 a. m., the motel's checkout time. He had turned in his key the night before after his arrest.

Relying on these sections, the district court suppressed the telephone conversation overheard by Officer Stack when Mrs. Dye turned over her headset to him. Neither party contests the correctness of this ruling, nor do we. The lower court refused to suppress the first conversation overheard by Mrs. Dye and related to Officer Stack, however, relying on the exception provided in 18 U.S.C. § 2511(2)(a)(i):

> It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided,* That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

We hold that the district court correctly denied defendant Savage's motion to suppress Mrs. Dye's intercept.

 Title III of the Omnibus Crime Control and Safe Streets Act of 1968

> prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials engaged in the investigation of specified types of major crimes after obtaining a court order, with exceptions provided for interceptions by employees of communications facilities whose normal course of employment would make necessary such interception, personnel of the Federal

Communications Commission in the normal course of employment, and Government agents to secure information under the powers of the President to protect the Nation against actual or potential attack, or to otherwise protect the national security. This proposed legislation conforms to the constitutional standards set out in *Berger v. New York* (388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)), and *Katz v. United States* (389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112, 2113. In legislating the exception provided in 18 U.S.C. § 2511(2)(a)(i), Congress intended to permit telephone companies to monitor telephone communications in order to determine if callers were using "blue boxes" to avoid paying for long-distance telephone calls.[6] *See, e. g., United States v. Harvey,* 8 Cir., 1976, 540 F.2d 1345, 1349-51; *United States v. Freeman,* 7 Cir., 1975, 524 F.2d 337, 339-42, *cert. denied,* 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976); *United States v. Clegg,* 5 Cir., 1975, 509 F.2d 605, 611-13; S.Rep.No.1097, *supra,* at 2182.[7] Otherwise, the legislative history is silent. Nonetheless, the plain meaning of Congress' language in section 2511(2)(a)(i) indicates that the circumstances of this case fall within its ambit. *See generally United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Under the facts of this case, Mrs. Dye is "an operator of a switchboard." She intercepted and disclosed to Officer Stack "a wire communication"—in this case a telephone conversation pertaining to possible criminal conduct. She did so "in the normal course of [her] employment" while receiving incoming tele-

---

6. "A 'blue box' is an electronic signaling device which can be used to bypass the equipment which automatically records tolls on direct-dialed long-distance calls." *Hanna v. United States,* 394 U.S. 1015, 89 S.Ct. 1625, 23 L.Ed.2d 42 (1969) (Fortas and Douglas, JJ., dissenting from denial of certiorari).

7. Paragraph (2)(a) [now 18 U.S.C. § 2511(2)(a)(i)] provides that it shall not be unlawful for an operator of a switchboard or

employees of a common carrier to intercept, disclose, or use wire communications in the normal course of their employment while engaged in any activity which is a necessary incident to the rendition of his service or the protection of the rights or property of the carrier. It is intended to reflect existing law (*United States v. Beckley,* 259 F.Supp. 567 (D.C.Ga.1965)).

S.Rep.No.1097, *supra,* at 2182.

phone calls for occupants of her employer's motel, an "activity which is a necessary incident to the rendition of [her] service." Mrs. Dye's first intercept and disclosure were therefore lawful under section 2511(2)(a)(i).

An alternative ground for support of the lower court's decision to admit Mrs. Dye's first intercept is 18 U.S.C. § 2511(1)(a). That section provides that it is illegal for anyone *willfully* to intercept a wire or oral communication. Only then must the contents of the communication be suppressed. *See* 18 U.S.C. § 2515. In the instant case, it is clear from the record that Mrs. Dye's first intercept was inadvertent. The switchboard at the Daytona Beach Ramada Inn is a plug system with a headphone receiver. Mrs. Dye testified that to avoid hearing at least some of a conversation, she would "almost have to throw the receiver down." Mrs. Dye is 73 years old. As counsel for the Government pointed out in oral argument, her "reactions aren't the same as O. J. Simpson's." It was solely by accident, then, that Mrs. Dye overheard the first few words of the telephone call placed to Room 306 during the early morning hours of November 26. Defendant Savage asserts, however, that Mrs. Dye deliberately remained on the line after her initial intercept to listen in on the conversation. But the extent to which she did was due only to her initial inadvertent intercept that caused her to hear the voice of a female occupant of her employer's motel who was "very distraught and upset" and "almost crying." At that point Mrs. Dye became excited and failed to sever her switchboard connection; as she testified, "everything happened so quickly that I just didn't put the receiver down." Mrs. Dye remained on the line and heard approximately ten seconds of a conversation that would arouse the suspicions of any reasonable person that a crime may have been committed. Under the circumstances she did what she thought was right. She listened and then reported what she

had heard to the first policemen she encountered.

We find no evidence that Congress in passing Title III of the Omnibus Crime Control and Safe Streets Act of 1968 intended such conduct to be unlawful. *See* S.Rep.No.1097, *supra*, at 2177–83. This is not the case of an illegal wiretap by the Government or the case of a malicious violation of one person's privacy by another through intentional eavesdropping. It is the simple case of a motel switchboard operator who inadvertently heard a suspicious conversation in the course of her employment and in good faith told a policeman what she had heard. The telephone conversation was therefore admissible as evidence.[8] *See Roberts v. State*, 1969, 453 P.2d 898, 904 (Alas.), *cert. denied*, 396 U.S. 1022, 90 S.Ct. 594, 24 L.Ed.2d 515 (1970); *State of Arizona ex rel. Flournoy v. Wren*, 1972, 108 Ariz. 356, 360–61, 498 P.2d 444, 448–89; *People v. Sierra*, 1973, 74 Misc.2d 332, 343 N.Y.S.2d 196 (S.Ct.).

### III. Probable Cause

■ A warrantless arrest, as in this case, is constitutional if at the moment the arrest was made the arresting officer had probable cause to make it. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Savage's second contention is that the police did not have probable cause to arrest him and therefore his arrest and the search of his motel room immediately following his arrest violated the fourth amendment.

■ Probable cause exists "when the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." *United States v. Lowery*, 5 Cir., 1970, 436 F.2d 1171, 1174, *cert. denied*, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 329 (1971), *citing*

---

8. It is uncontroverted that Mrs. Dye's disclosure of the contents of the conversation to Officer Stack, unlike her initial intercept, was willful. *See* 18 U.S.C. § 2511(1)(c). It was not, however, the willful disclosure of a conversation intercepted in violation of 18 U.S.C. § 2511(1)(a) or any other part of section 2511(1).

*Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959), *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). Moreover, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

■ Even without the information obtained from the first intercepted telephone conversation, the police had probable cause to arrest Savage. Officer Stack knew that someone in Room 306 passed a twenty-dollar counterfeit bill to Tom Barbee. Room 306 was registered to Patrick Joseph Savage. When Stack entered the room during the early morning hours of November 26, Barbee identified Savage as the passer of the bill. *See United States v. Masini,* 6 Cir., 1966, 358 F.2d 100. The knowledge acquired from the first telephone intercept only established more firmly an already convincing case of probable cause.

■ Because the police had probable cause to arrest Savage, the warrantless search of his motel room immediately following his arrest was legal under the fourth amendment. Relying on *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the district court held that this search, which produced seventy counterfeit twenty-dollar bills found in the pocket of a longsleeve shirt on a closet shelf, was valid as a reasonable search incident to a lawful arrest. We agree. In *Chimel* the Supreme Court stated:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entire-

ly reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence.

395 U.S. at 762–63, 89 S.Ct. at 2040. The record indicates that the Daytona Beach police limited their search to "the arrestee's person and the area 'within his immediate control.'" The second search of the room, at approximately noon on November 26, produced, *inter alia,* some \$23,000 in counterfeit twenty-dollar notes. This search was also constitutionally valid, because when it was conducted Savage had surrendered possession of the room, *see* note 5 *supra,* and the motel management consented to the search. The trial court thus properly admitted the evidence derived from both the search immediately following Savage's arrest and the later search at noon on November 26.

The defendant's conviction is AFFIRMED.