**UNITED STATES of America, Plaintiff,**

v.

**Michael Wayne WARREN and William Thomas Kelly, Defendants.**

**No. 80–260–Cr–EPS.**

United States District Court,
S. D. Florida,
Miami Division.

Oct. 17, 1980.

As Modified Oct. 18, 1980.

---

William C. Turnoff, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Sheldon Yavitz, Miami, Fla., for Warren.

Theodore Sakowitz, Federal Public Defender, Miami, Fla., for Kelly.

## MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO SUPPRESS

SPELLMAN, District Judge.

THIS CAUSE was before the Court on the Defendants' Motions to Suppress fingerprints taken of Defendant Kelly and the identifications of both Defendants derived from booking photographs taken of Defendants subsequent to their arrest for possession of stolen property. A hearing was held at which testimony was taken.

### FACTS:

At 7:49 a. m. on June 26, 1980, Officer Steve Woods, an aircraft operator with the Dade County Public Safety Department (P.S.D.), was flying an official helicopter in the area of Southwest 207th Avenue and 232nd Street, Dade County, Florida. Woods testified that the area in question is immediately south and north of two commercial air fields accommodating planes of the type hereinafter described.

Officer Woods stated that he observed an airplane that was flying at low altitude circle the area several times and land on 207th Avenue, a public road. He further testified that landing the airplane on that particular road under other than emergency conditions was illegal and that the particular area in question had in the past been predominantly used for narcotic drops.

Upon landing, Officer Woods observed a Ford Bronco automobile drive up adjacent to the aircraft; the door of the aircraft opened; and two individuals exited the plane after several plastic drums had been discarded from it. The individuals got into the Ford Bronco and rapidly exited the area in a northerly, then easterly direction, leaving the large Cessna Titan airplane behind.

The car subsequently stopped and an individual later identified as the Defendant Warren exited the same. The Officer in the helicopter motioned to that Defendant to proceed to an open area but, instead, Warren fled into an avocado grove and was later apprehended. At the time that Warren was observed by Officer Woods he was carrying a satchel; a similar satchel was located in the area.

Subsequently, a second suspect, fitting the description given by Officer Woods in a be–on–the–lookout message, was apprehended by the P.S.D. as he was walking along 207th Avenue. The individual, a black male, later identified as Defendant Kelly, was carrying no identification, gave his name as Johnson, indicated that he had come down to that area for a drinking party, and also indicated no knowledge of any airplane.

P.S.D. Officer Askew arrived at the scene at approximately 8:15 a. m. and became the officer in charge of the case. Askew testified that he effectuated the arrest and transportation of the Defendants to substation 4 about 15 miles away. Askew stated he originally arrested them for loitering and prowling, an offense defined in Fla. Stat. 856.021 (1972). At the same time, Askew was investigating the possibility that the aircraft was stolen. While at the scene, Askew noticed pry marks on the door of the aircraft and a screwdriver inside the plane.

At the scene, a check through U. S. Customs determined that the airplane had made an illegal departure from Kingston, Jamaica with two occupants, one of whom was described as a black male who identified himself as Johnson. Later in the day, by tracing the tail number of the airplane,

Askew was able to determine that the plane was owned by a Jamaica corporation which had sent the plane to Opa Locka, Florida for repairs where it was stolen. By the time Askew checked with the president of the Jamaica corporation to determine that it wished to prosecute this offense, it was 4:00 p. m. At this point, Askew formally charged Warren and Kelly with possession of stolen property. Several hours later, Kelly and Warren were fingerprinted and photographed at the Dade County Jail.

Approximately two months later, F.B.I. Agent Scarborough displayed photographs of the Defendants to witnesses at Opa Locka and in Jamaica resulting in positive identification of both Defendants. The Dade County police had previously matched fingerprints found both in the airplane and on the satchel dropped by Warren to those of Defendant Kelly.

## FINDINGS:

The Motions to Suppress are denied.

■ Defendants seek to portray the fingerprints and photographs as fruit of a poisonous tree, that tree being the detention of the Defendants by Dade County Police Officers for seven hours prior to booking. The Court finds that the fingerprint and photograph evidence are not fruit of the tree of detention. As a tree, the detention itself was barren. No leads were developed as a result of the detention. The detention served merely to enable the police officers to more easily effectuate the arrest of the Defendants for possession of stolen property. Moreover, even the timing of the display of the photographs to witnesses in Jamaica was not speeded up because of the detention; the photos were not used until two months after they were taken. The fingerprints have not yet been used to the Defendants' prejudice in this case; and there is no doubt that this Court may now order the fingerprinting of the Defendants even if it were to suppress the previous fingerprints.[1]

In the garden of law enforcement there are many trees. Some may bear poisonous fruit, but others bear ripe, succulent avocados. If the detention in this case were a poisonous tree, warrantless and unsupported by probable cause (and the Court, *infra*, finds to the contrary), it is of no import. The tree which led to the fingerprints and photographs was a healthy, normal tree, nourished by sound investigative procedures.

"Granting establishment of the primary illegality," the question is whether "the evidence to which instant objection is made had been come at by exploitation of that illegality or by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The inquiry must be answered against the Defendants. The purge is complete under this Court's two tree analysis of the case. The detention "tree" is just part of the interesting but otherwise irrelevant flora in this criminal prosecution.

■ Even if the discovery of the fingerprints and photographs of the Defendants were not inevitable in the course of the investigation, and could only have been come at through exploitation of the day long detention of the Defendants, the Court finds that the detention, which because of its length must simply be considered an arrest, was based upon probable cause, developed after the initial stop of the Defendants which was in turn based on reasonable suspicion of criminal wrongdoing.

The facts and circumstances have been recounted above. Defendants Warren and Kelly apparently landed a large airplane on a public road and abandoned it there. A car and driver were apparently awaiting their arrival. Warren and Kelly drove away, then exited the car and fled the pursuing police helicopter and when ap-

1. Thus, the discovery of the evidence was inevitable. Had Kelly and Warren been released immediately after they were stopped, probable cause for their arrest would still have been developed by 4:00 p. m. that day. Fingerprinting and photographing of the Defendants would have followed their arrest in any event, as happened in this case.

prehended gave designedly unsatisfactory answers to the officers' questions. The conduct of the Defendants in landing the plane in a known narcotic drop point, on a public road despite the existence of convenient nearby airports and in fleeing the scene was highly suspicious. Clearly, the initial stop of the Defendants was based upon well-founded reasonable suspicion.

This case is easily distinguishable from *Reid v. Georgia*, —— U.S. ——, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). There, a passenger departed a regularly scheduled airline flight at the Atlanta Airport and was stopped simply because he fit a rather broad drug courier profile. The defendant fled the police and evidence was seized from his handbag. The Court suppressed the evidence because the initial stop was based on less than a reasonable suspicion. Unlike *Reid*, the conduct of the Defendants in the present case was extremely unusual, dangerous, and indicative of criminal conduct. The initial stop was reasonable.

 Given the lawfulness of the initial stop, the subsequent arrest and detention of the Defendants can be justified under a finding of probable cause to believe some violation of the law had occurred. Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe an offense has been or is being committed. *U. S. v. Savage*, 564 F.2d 728 (5th Cir. 1977).

The fact that the Defendants fled the approach of the police helicopter and refused to explain their actions to the police is substantial justification for their arrest under the Florida loitering and prowling statute, Fla.Stat. 856.021 (1972). The Florida Supreme Court, in *State v. Ecker*, 311 So.2d 104, at 110 (1975) states that this Statute contains two elements: (1) loitering or prowling at a time and in a manner not usual for law-abiding individuals, and (2) such loitering or prowling was under such circumstances that threaten the public safety. These elements were fully satisfied by the actions of the Defendants in this case. The Defendants had just left a large airplane in a public road and had driven away. Warren subsequently ran into an avocado grove near other persons who were working in the grove. Kelly was later found walking along the road with an avocado in his hand claiming he had been picking fruit after a drinking party. The circumstances, especially the airplane in the road, potentially threatened the public safety. Thus, the Court finds that probable cause existed for arresting Kelly and Warren under Florida Statute 856.021 (1972).

For the above and foregoing reasons, it is hereby

ORDERED and ADJUDGED that said Motions to Suppress be and the same are hereby DENIED.