**Larry JOHNSON, Plaintiff,**

v.

**Donald PETERSEN and Rudy Smirnov, Defendants.**

No. 82–C–609.

United States District Court, W.D. Wisconsin.

May 10, 1983.

B.J. Hammarback, Spring Valley, Wis., for plaintiff.

Thomas M. Fitzpatrick, La Crosse, Wis., Warren Lee Brandt, Prescott, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is a motion for summary judgment by defendants Petersen and Smirnov, the other original defendants having been dismissed by previous orders.

Jurisdiction is based on 28 U.S.C. § 1343, plaintiff alleging that the defendants violated his constitutional rights under color of state law in violation of 42 U.S.C. § 1983. The complaint alleges violations of the Fourth and Fourteenth Amendments to the Constitution, false arrest and false imprisonment and pendent state claims.

## FACTS

Plaintiff Larry Johnson is a resident of Pierce County, Wisconsin and was, during the times pertinent to the complaint, the owner of a house located in the Town of Oak Grove, Pierce County, Wisconsin.

Defendant Donald Petersen, at the time pertinent to the complaint, was Chief Deputy Sheriff for Pierce County, Wisconsin. Defendant Rudy Smirnov, at the time perti-

nent to the complaint, was an investigator for the Pierce County Sheriff's Department.

The house owned by plaintiff in Oak Grove was subjected to a search on March 31, 1981 by officers of the Pierce County Sheriff's Department, including the defendants, pursuant to a search warrant signed by Pierce County's Circuit Judge, William E. McEwen.

The warrant was issued on the basis of information provided in an affidavit executed by defendant Petersen, who then advised the other officers engaged in the search of its contents. The warrant covered not only the Oak Grove house owned by the plaintiff, but also another residence in nearby Clifton owned by one John McEnroe, and directed the seizure of controlled substances.

The search of the Oak Grove house produced evidence of criminal conduct, specifically marijuana in bags, seed and other paraphernalia used for growing and using marijuana, together with more than 50 marijuana plants ranging in size from six to sixteen inches in height.

The affidavit supporting the search warrant alleged that the house in Oak Grove was owned by plaintiff but rented to John McEnroe.

At the time of the execution of the warrant, three persons were found within the Oak Grove house, including plaintiff's brother, but not including McEnroe nor plaintiff. Possessions belonging to plaintiff, including mail addressed to him, were found in a bedroom located just inside the door of the house. These materials were moved into the house sometime prior to the search in anticipation of plaintiff moving into the house after McEnroe's lease expired on April 1. (Whether or not marijuana was found in the room containing plaintiff's possessions is a disputed fact.)

Plaintiff arrived at the house some time after the beginning of the search, advised defendant Smirnov that he owned the house and was in the process of moving into it. Plaintiff was placed under arrest by Smirnov. (The most compelling evidence suggests that Smirnov arrested plaintiff and then sought confirmation of the act by speaking with defendant Petersen and District Attorney Warren Brandt by telephone. There is some dispute about the sequence of events, although the Court does not believe the dispute to concern a material fact.)

Plaintiff was transported to the Pierce County jail on the evening of March 31; released on bond on April 2; and appeared before a judge on April 3. (There is some dispute as to who was responsible for transporting plaintiff to jail. The fact is not material.)

Plaintiff was charged in a multi-count, multi-party criminal complaint filed on April 3, 1981 with conspiracy to possess and deliver, and possession of a controlled substance; and with maintenance of a house used for the distribution and manufacture of marijuana. These charges constituted felonies under Wisconsin law. All charges against the plaintiff were subsequently dismissed on the motion of the Pierce County District Attorney.

Further facts, particularly concerning the contents of the warrant and Petersen's affidavit, are contained in the body of the following opinion.

### MEMORANDUM

■ There can be no doubt that no cause of action under 42 U.S.C. § 1983 arises simply because a person who is later shown to be innocent is arrested and jailed. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Only arrest and detention without probable cause; that is, outside of constitutional standards, creates liability. *Bur v. Gilbert,* 415 F.Supp. 335 (E.D. Wis.1976).

■ Plaintiff was arrested without a warrant and the arrest was executed by Officer Smirnov, who can be credited with the following pieces of information at the time he arrested plaintiff:

1. A controlled substance had been found in a residence owned by the plaintiff;

2. There were indications that plaintiff either lived in the residence or at least

spent enough time there to have knowledge of the fact that marijuana was present.[1] Mail addressed to plaintiff had been seen in plain sight in one of the bedrooms. The extent of the illegal operation in the home leaves no doubt that a frequenter would have been aware of the activity;

3. Plaintiff admitted his ownership of the property;

4. State law forbids possession of marijuana and also forbids the intentional maintenance of a dwelling frequented by users of controlled substances or used for manufacturing, keeping or delivering such substances.

The Court must conclude that the above information, while not conclusive, does establish probable cause for plaintiff's arrest. As stated in *Spinelli v. U.S.*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); "Only the probability, and not a *prima facie* showing of criminal activity, is the standard of probable cause." Probable cause is the equivalent of "reasonable grounds to believe." *U.S. v. Melvin*, 596 F.2d 492 (1st Cir.), cert. denied, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979), citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). The issue of probable cause is "to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *U.S. v. Davis*, 458 F.2d 819, 821 (D.C. Cir.1972).

Defendant Smirnov had reasonable grounds for his belief that a crime had been committed and that the plaintiff was guilty of the crime. There was sufficient indication that plaintiff was, or should have been familiar enough with the activities that he must have known of the marijuana growing in the house. There was also sufficient indication that, even if plaintiff was not living in the house, he was frequenting the house he owned with a frequency that belied ignorance of what was going on.

Plaintiff seems to suggest that his protestations at the time of arrest should have put Officer Smirnov on notice that there was sufficient doubt of plaintiff's guilt to destroy probable cause. There is no logic to this point of view. Although plaintiff may, in the abstract, be a responsible citizen, a police officer cannot be expected to change his mind because a person suspected of a crime claims his innocence. Even if the information provided by one who is suspected of a crime should create some doubt in the mind of the arresting officer, it is certainly reasonable for the officer to carry on with the arrest and investigate further at a later time.

It would not have been sufficient for Officer Smirnov to depend solely on plaintiff's ownership of the property. Nor did any of the other facts known to Smirnov in isolation establish probable cause. However, it was reasonable for Smirnov to infer plaintiff's guilt (for purposes of arrest) from the totality of the information known to him. He need not ignore the forest by concentrating on the trees.

■ Finally, plaintiff suggests that, because some of the information which Smirnov relied upon was a fruit of an illegal search, the arrest was illegal. While the Court does not concede that the search was illegal (a point discussed later in this opinion), Smirnov's liability cannot be established in this way. It is well established that an arrest executed by a facially valid arrest warrant is legal insofar as the arresting officer's liability is concerned. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Pritz v. Hackett*, 440 F.Supp. 592 (W.D.Wis.1977). The obvious implication of this holding is that an arresting officer is allowed to rely in good faith on a magistrate's decision that probable cause exists. The officer's liability is thus defeated. However, plaintiff was arrested without a warrant. But defendant Smirnov's liability must also be defeated by his

---

1. Defendants claim that plaintiff's brother, who was present when the search warrant was executed, stated that plaintiff would return "home" shortly. Plaintiff sufficiently shows this fact to be disputed, but the Court is convinced that defendants had sufficient information for probable cause without it. The fact is merely cumulative.

reliance on evidence obtained through a facially valid search warrant. He did nothing to obtain the warrant (assuming it was obtained illegally) and therefore must be allowed to rely on the evidence obtained in establishing probable cause for arrest. Assuming that evidence obtained illegally taints an arrest based on that evidence,[2] it does not mean that the officer who arrests the aggrieved party should be liable for false arrest. If the evidence obtained illegally, but with a search warrant, establishes (or helps to establish) probable cause, the arresting officer is in precisely the same position as one who acts on a facially valid arrest warrant.

Therefore, defendant Smirnov's motion for summary judgment must be granted.

The basis of defendant Petersen's liability is somewhat different. It is his action in obtaining the search warrant (and which ultimately led to the arrest) that must be the basis of his liability.

■ Plaintiff does not contend that Petersen's affidavit contained falsehoods; he merely alleges that the information does not constitute probable cause to search the residence in question. Thus, a preliminary question is whether an officer who obtains a search warrant from a neutral and detached magistrate can be held liable for an illegal search.

The Court must conclude that such an officer cannot be held liable. The error is the magistrate's, not the officer's. By requesting a warrant, the officer is doing precisely what the law intends—that the decision as to whether probable cause for the search exists should be made, whenever possible, by a disinterested judicial officer. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Johnson v. U.S.,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). A search under a warrant may be sustainable by the very fact that a judicial officer has been interposed even though the same search would not have been legal without a warrant. *U.S. v. Ventresca,* 380

U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965). As in the case of an arrest, an officer ought to be able to rely on the validity of a warrant in making the search.

Furthermore, it is clear that, even if the affidavit which supported the issuance of the warrant contained incorrect information, the warrant would still be legal. In order to exclude evidence obtained under such circumstances, a criminal defendant would have to show that the affidavit (or the underlying allegations in it) was knowingly and intentionally untrue or made in reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Plaintiff has made nothing resembling such an allegation. Nor has plaintiff convinced the Court that the warrant was issued without probable cause. On the contrary, the warrant appears sufficient in every respect.

■ Plaintiff contends that the warrant is invalid because it is a "general warrant." *See Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). A warrant must be specific as to the place to be searched and the things to be seized. Plaintiff suggests that the warrant, because it named two separate residences, was general. There is no authority offered for this proposition. The warrant is sufficiently specific both as to the residences in question—a legal description is provided, at least in part—and as to the things to be seized—controlled substances. The fact that two residences were named appears to be eminently reasonable. "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. U.S.,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). It is certainly reasonable to suggest that drug dealers may have their stock in trade secreted in any of the places where they live as well as in their vehicles or on their person. *See U.S. v. Valenzuela,* 596 F.2d 824 (9th Cir.

---

**2.** Even this is not a safe assumption. Plaintiff impliedly claims that he had no control over the premises in question. Thus, his standing to

challenge the search warrant is far from established. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

1979) cert. den. 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071. The naming of two separate residences in a warrant when the items to be seized can be moved from place to place is not illegal. *See U.S. v. Hillyard,* 677 F.2d 1336 (8th Cir.1982). Any question concerning the specificity of the warrant is put to rest by the following language from *Zurcher v. Stanford Daily,* 436 U.S. 547, 558, 98 S.Ct. 1970, 1978, 56 L.Ed.2d 525 (1978):

> Once it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of *any property* which the magistrate has probable cause to believe may be the place of concealment of "fruits, instrumentalities, or evidence." (emphasis supplied, citations omitted)

Second, plaintiff contends that the first part of the two-pronged *Aguilar* test was not satisfied. He contends that all of the circumstances necessary for the magistrate to make an independent judgment of probable cause must be provided.

The facts in the affidavit of defendant Petersen which formed the basis of the warrant were as follows:

1. Petersen was informed by Michael Bartlett that, in the course of his duties as a telephone repairman, Bartlett observed the following:

> a. On March 6, 1981 Bartlett was refused permission to enter the basement of the Oak Grove residence (the property owned by plaintiff here) of one John McEnroe;

> b. On March 30, 1981, in the process of installing a phone for McEnroe at a residence in Clifton, Bartlett saw a large quantity of a green leafy substance believed by Bartlett to be marijuana.

2. Petersen knew Bartlett (not named in the affidavit) to be a reliable informant from past experience, experience which is explained with some specificity.

3. Petersen believed Bartlett to be able to identify marijuana.

4. On March 3, 1981, an anonymous female caller reported that her 17-year-old son had purchased marijuana at the Oak Grove residence of the owner of the Celebrity Lounge in Prescott. McEnroe was the owner of the Celebrity Lounge. The woman also reported that the residence contained a large number of marijuana plants in the basement.

None of these facts in isolation would have formed the basis of probable cause to search the Oak Grove residence owned by plaintiff. Plaintiff claims that the only evidence was the March 6 refusal to allow Bartlett entry into the basement of the residence. But marijuana was recently seen in another residence under the control of McEnroe. And, not only was Bartlett refused permission to enter the basement; another (not altogether reliable) source had indicated that the basement was filled with growing marijuana. Taken together, these facts support the determination of probable cause. As stated in *Spinelli,* 393 U.S. at 419, 89 S.Ct. at 590:

> [I]n judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense.

Plaintiff also attacks the timeliness of the probable cause determination, apparently suggesting that the evidence concerning the Oak Grove residence was stale. Illustrative of the fallacy of plaintiff's argument is *U.S. v. Williams,* 603 F.2d 1168 (5th Cir.1979) cert. den. 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658, where the informant gave police information from "within the last six months." This was sufficient because the affidavit described a continuing drug operation. Here there is a present indication (Bartlett's sighting of marijuana one day before the search in another residence controlled by McEnroe) that otherwise stale information might be still good. The previously quoted language from *Zurcher v. Stanford Daily* supports this conclusion.

Plaintiff further tries to make an issue out of the actions of Bartlett. Bartlett was not only a telephone repairman; he also worked as a part-time policeman in a nearby municipality. By innuendo, plaintiff attempts to suggest that Bartlett was enter-

ing the residences in question in order to collect evidence for the police, and that his entry into each of the residences was a warrantless search.

First, the only evidence cognizable on this motion that has been presented supports defendants' contention that Bartlett was not engaged in any law enforcement activity when he entered the residences.

Second, plaintiff has cited absolutely no authority for the proposition that the entry of police into a residence by invitation or permission (albeit under false pretenses) constitutes a search. This Court is aware of no such authority either. Even if Bartlett were performing a law enforcement function at the time, he was an invitee in both residences and observed evidence of illegal activity. As stated in *U.S. v. Scherer*, 673 F.2d 176, 182 (7th Cir.1982):

> A government agent may obtain an invitation onto property by misrepresenting his identity, and if invited, does not need probable cause nor warrant to enter so long as he does not exceed the scope of his invitation. (citations omitted)

There is no hint that Bartlett did anything outside the scope of his invitation.[3] It appears that he went (or tried to go, as it concerns the basement of the Oak Grove residence) to those locations necessary to work on telephones. In other words, Bartlett's status makes utterly no difference as long as his reliability as an informant was properly presented to the magistrate. Plaintiff makes no claim that this was not done.

Finally, plaintiff's claims for false imprisonment rest on nothing but a Wisconsin statute which states that an officer having custody of a person arrested without a warrant has the authority to release the individual if he "is satisfied that there are insufficient grounds for the issuance of a criminal complaint ...." Wis.Stats. § 968.08. Given the Court's decisions on

plaintiff's previous claims, the Court is at a loss to conjure a reason why either of the remaining defendants would be satisfied that there were insufficient grounds to issue a criminal complaint. If there is probable cause to arrest, there is probable cause sufficient for the issuance of a complaint. Wis.Stats. § 968.02(3). As a practical matter, defendant Petersen may have had the authority to release plaintiff (it is not likely that defendant Smirnov did after plaintiff was transported to jail—it can be presumed that such decisions should be in the hands of the officer in charge of an investigation). However, plaintiff offers no evidence that Petersen had information which would compel him to release the plaintiff before he was, in fact, released.

To the extent that plaintiff's complaint states pendent state claims it must be dismissed because of the Court's disposition of the claims based on federal law. It appears that the pendent state claims would be defeated for precisely the same reasons that the federal claims are dismissed. Nevertheless, the dismissal of the state claims is not on the merits, but is rather based on holding of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), that pendent state claims should be dismissed when the federal claims are dismissed prior to trial.

Finally, the Pierce County Sheriffs Department, a defendant added by the amended complaint, must be also dismissed where all of its officers have been previously dismissed. Its alleged negligence in its supervision and training is no longer an issue before the Court.

After examining all of the materials submitted by the parties on defendants' motion for summary judgment:

### ORDER

IT IS ORDERED that the motion for summary judgment by defendants Smirnov and Petersen is GRANTED.

---

**3.** Plaintiff claims that the affidavit supporting the search warrant states that Bartlett took a sample of the green leafy substance from the Clifton residence on March 30, and had it analyzed by Pierce County authorities. The Court has carefully read the affidavit and can find nothing to support any such inference, much less a clear statement to that effect. Plaintiff offers nothing to support the claim. At any rate, it is clear that the affidavit did not mention the fact, so it cannot be a matter considered by the magistrate.

IT IS FURTHER ORDERED that the complaint against the defendant Pierce County Sheriffs Department is DIS-MISSED.

With the disposition of all federal claims,

IT IS FURTHER ORDERED that this matter is DISMISSED with prejudice and costs, except that pendent state claims are DISMISSED without prejudice.