**Gail Horne RAY**

v.

**Tullie VINCENT, Michael J. Dickinson, William Devinney, John Bosco, Certain Unknown City of Baton Rouge Police Officers, Baton Rouge Police Officers, Baton Rouge Police Department, and East Baton Rouge Parish Government.**

Civ. A. No. 88–169–A.

United States District Court,
M.D. Louisiana.

March 28, 1988.

Nelson D. Taylor, Robert C. Williams, Baton Rouge, La., for plaintiff.

Richard E. Redd, Legal Div., James M. Ross, Asst. Parish Atty., Baton Rouge, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION FOR PRELIMINARY INJUNCTION

JOHN V. PARKER, Chief Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. Plaintiff, an attorney-at-law, claims she will suffer irreparable injury, unless this court requires that any future subpoena or search warrant relating to plaintiff or her property be executed only upon written order of the court, and also enjoins defendants from coming to her office or home except by her invitation. At the hearing held in this matter on March 8, 1988, the court granted plaintiff the opportunity to file a supplemental brief within ten days, defendants' reply brief to be filed five days thereafter. Plaintiff has failed to file such a brief, and the court will proceed without such assistance. These findings and conclusions will supplement the court's verbal statements following conclusion of the hearing.

On the morning of February 24, 1988, city police officers had "staked out" a residence at 437 N. Eugene Street in Baton Rouge, Louisiana; they had information that a drug dealer named Mozell Gatlin was residing there. They were seeking a warrant for the arrest of Gatlin and their purpose was to ascertain Gatlin's where-abouts so that the arrest could be effected when the paper work was done and the warrant was issued. Officers Daigle and Cowart were in a vehicle about a block away, keeping the front door in view. Officer Vincent was around the corner, keeping the rear door and yard in view. The officers were seeking Gatlin's arrest because six people had been arrested the day before charged with selling cocaine, three of them juveniles. Two of the juveniles informed the officers that Gatlin had given them the cocaine to sell for him. Gatlin had entered a guilty plea only a few days earlier in a plea bargain on drug trafficking charges. He was thus a known drug dealer.

Gatlin came from the residence, got in his Cadillac and drove off. He was followed by the three officers in two vehicles, who made no attempt to conceal themselves. Gatlin observed them, drove around a few blocks and returned to the residence. The officers resumed their observation posts. Officer Vincent observed Gatlin come out the rear door, walk to the back fence and drop an object over the fence. He kept the object's location in view until he subsequently retrieved it—it was a revolver. Subsequently, Vincent observed a woman whom he identified as Gatlin's wife come out the back door, enter a garage apartment and reenter the residence with two packages. Mrs. Gatlin testified that she was not at the residence on N. Eugene at all on February 24, but both she and Vincent concede that they know each other.

In the meantime, at the front of the house, Officer Daigle observed a bail bondsman, Joe Collier, arrive shortly after Gatlin returned. Then plaintiff arrived and went into the residence. Plaintiff is Gatlin's lawyer. Officer Daigle did not know plaintiff. She testified that a fourth vehicle arrived later and that some young people were in that vehicle and that they all went into the residence. She further testified that Collier, plaintiff and several other people came out the front door, including a woman she thought might be Gatlin's wife, although she did not actually know Gatlin's wife. In any event, Collier got into his

vehicle and, according to Officer Daigle, plaintiff and the woman she thought might be Gatlin's wife, approached the rear of plaintiff's vehicle, the trunk was opened and the woman placed a package in a brown paper bag in the trunk. Plaintiff testified that she is the only person who placed an object in the trunk of the vehicle but she does admit that an object was placed therein.

Collier and plaintiff then drove off. These events were reported by radio to Sgt. Dickinson who instructed that plaintiff's vehicle be stopped. Sgt. Dickinson was involved in the paper work for Gatlin's arrest. He knew plaintiff but was not aware that she represented Gatlin and was not aware that it was plaintiff's vehicle which was to be stopped.

Officer Bosco and his partner were dispatched to stop plaintiff's vehicle which they did a few blocks from the N. Eugene Street residence. Officers Daigle and Cowart drove to the scene and identified the vehicle and the driver as the vehicle and driver to be stopped and informed Bosco and his partner that they should request the driver to consent to a search of the vehicle. They then returned to the residence.

In the meantime, at the rear of the residence, Officer Vincent retrieved the weapon which he had seen Gatlin drop over the fence and he drove to the scene of the stop. Plaintiff had already identified herself as a lawyer, informed the officers that whatever was in the trunk of her vehicle was subject to the attorney-client privilege and refused to consent to a search of the vehicle. She requested and was denied permission to leave. When Vincent arrived, he recognized plaintiff and informed her that her client was now wanted on a charge of being a felon in possession of a firearm and displayed the weapon. Plaintiff again declined to consent to a search and she was allowed to leave. The entire stop consumed no more than 10 to 15 minutes.

A short time later the warrant for Gatlin's arrest issued but when the officers arrived at the N. Eugene Street residence, he was not there—he apparently had slipped out during the confusion over the stop of plaintiff's vehicle.

Subsequently, Sgt. Dickinson presented his affidavit along with a request for a search warrant to Judge Hester of the Nineteenth Judicial District Court, reciting substantially the facts set forth above, though in considerably less detail. The affidavit does contain the statement that Gatlin's wife placed two packages in the trunk of the vehicle of "attorney, Gail Ray." As noted earlier, plaintiff insists that no one except her placed any object in the vehicle. This error is insignificant—the important fact is that someone placed an object from a convicted drug dealer's residence in the vehicle. Judge Hester reviewed the affidavit, concluded that there was probable cause to search the vehicle and signed a warrant authorizing the search of plaintiff's vehicle.

Later in the afternoon, officers went to plaintiff's law office and searched the vehicle.

After carefully considering the record, briefs, evidence and arguments made at the hearing, as well as the applicable law, the court denies the motion for preliminary injunction. On these facts, plaintiff simply does not make out a case for injunctive relief.

Plaintiff filed this civil rights action seeking injunctive relief and damages under 42 U.S.C. §§ 1981, 1983, and 1985, with subject matter jurisdiction vested in this court under 28 U.S.C. § 1343(3). Plaintiff specifically alleged in her complaint that defendant police officers violated her rights secured under the Constitution of the United States when they arrested and unlawfully detained her on the morning of February 24, 1988. Plaintiff also alleged that on the afternoon of February 24, her civil rights were violated when her automobile was searched pursuant to an "invalid" search warrant.

Our analysis must begin with the four factors that are to be considered whenever a motion for preliminary injunction is made:

(1) a substantial likelihood that the plaintiff will ultimately prevail on the merits of his claim; (2) the injunction must be necessary to prevent irreparable injury; (3) the threatened injury to plaintiff must outweigh the harm the injunction might do the defendants, and (4) the entry of an injunction must be consistent with the public interest. *Henry v. First National Bank of Clarksdale,* 595 F.2d 291, 302 (5th Cir. 1979), cert. denied 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). The court finds that under the applicable substantive law, plaintiff has failed to show a substantial likelihood of success on the merits.

The testimony at the hearing establishes that the stop and questioning of plaintiff by several Baton Rouge City Police officers lasted no more than fifteen minutes.

Plaintiff contends that this stop and questioning by the officers constituted an arrest made without probable cause in violation of her Fourth and Fourteenth Amendment rights. The court concludes from the evidence presented that plaintiff was indeed "seized" within the meaning of the Fourth Amendment. However, not every "seizure" is an arrest that must be justified by probable cause. *U.S. v. Martinez,* 808 F.2d 1050 (5th Cir.1987). The Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), recognized that a reasonable suspicion of criminal activity based on contemporaneous observations, justifies a temporary stop and detention for the purpose of investigating that suspicion. *Martinez,* at p. 1053. Whether a detention is an arrest or merely a "Terry-stop" depends on the "reasonableness" of the intrusion under all the facts. *Martinez,* p. 1053; *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Based on the following undisputed facts—plaintiff was detained on a public street for no more than fifteen minutes, questioned concerning the package placed in the trunk of her car and allowed to leave after a second request made only a few minutes after her first request, the court concludes that the detention was a proper investigatory stop. This finding is supported by *U.S. v. Hanson,* 801 F.2d 757 (5th Cir.1986), where the court

held that the detention did not exceed permissable bounds of an investigatory stop, where the stop took place in a visible public place, the subjects were detained at most for 20 minutes and the officers proceeded expeditiously in their questioning. The plaintiff in this case has not presented any evidence to contradict the testimony which shows that the officers were acting in a rapidly developing situation and effected the "Terry" stop in an effort to confirm or dispel their suspicions quickly.

■ It is well-established that an individual's right to be free from unlawful arrest and detention is a federally protected right, the violation of which may be grounds for a suit under § 1983. *Dennis v. Warren,* 779 F.2d 245 (5th Cir.1985). However, to prevail on a § 1983 claim for false arrest, the plaintiff must prove that the officer made the arrest without probable cause. *Hinshaw v. Doffer,* 785 F.2d 1260, 1266 (5th Cir.1986). The court finds at this preliminary injunction stage, that plaintiff has failed to offer evidence which establishes a substantial likelihood that she will prevail on the merits of a § 1983 claim based on false arrest or detention.

■ Plaintiff also bases her § 1983 claim on an allegation that the warrant which issued authorizing the search of her vehicle was an invalid warrant. At the hearing held in this matter, the issuing judge testified that he made a neutral, independent determination based on the information within the four corners of the affidavit, and that in his opinion probable cause existed to authorize the search of plaintiff's vehicle. Based on the evidence presented, the court finds that the warrant is facially valid. Whether the affidavit contains sufficient information to show probable cause is not an issue—this court does not sit to review judicial decisions made by the state courts. The officers did exactly what the law requires them to do before conducting a search—they presented the information they had to a neutral magistrate for his decision as to whether there was probable cause to search the vehicle. The question then is whether an officer

who obtains a search warrant from a neutral and detached magistrate can be held liable under § 1983 for an illegal search. *Johnson v. Petersen,* 563 F.Supp. 672 (W.D.Wis.1983). Upon review of the jurisprudence, the court concludes that such an officer generally cannot be held liable. The error, if any, is the magistrate's, not the officer's. *Johnson,* at p. 676. The magistrate's determination of probable cause breaks the chain of causation and insulates the initiating officer from liability. See *U.S. v. Burzynski Cancer Research Institute,* 819 F.2d 1301 (5th Cir. 1987); *Jureczki v. City of Seabrook,* 760 F.2d 666 (5th Cir.1985). The jurisprudence is the same regarding arrests—where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Rodriguez v. Ritchey,* 556 F.2d 1185 (5th Cir.1977). The general rule then is that an officer cannot be held liable under § 1983 for acts or omissions in reliance upon a facially valid court order. *Jureczki* at p. 668. Under the jurisprudence, the only way plaintiff can show a constitutional violation is to establish that the information in the affidavit was knowingly and intentionally false or made in reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *U.S. v. Namer,* 680 F.2d 1088 (5th Cir. 1982).

The only information in the affidavit which may be untrue concerns the identity of the person who actually put the package in the truck of plaintiff's vehicle, and, as noted, that statement is really immaterial. There is no evidence indicating that any of these officers deliberately fabricated any information presented to Judge Hester. Indeed, the court finds that their conduct was proper under the circumstances of this record.

Accordingly, the motion for the preliminary injunction is hereby DENIED.