**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sharon Lanelle MARTINEZ, Defendant-Appellant.**

No. 85–2836.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1987.

Lucien M. Campbell, Nancy B. Barohn, Asst. Federal Public Defenders, San Antonio, Tex., for Martinez.

Michael R. Hardy, Helen M. Eversberg, U.S. Attys., San Antonio, Tex., for U.S.

Before CLARK, Chief Judge, WISDOM and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This appeal concerns the lawfulness, under the Fourth Amendment, of the stop and search of an automobile. An agent of the Drug Enforcement Agency suspected that the occupants of an automobile were engaged in or about to engage in the manufacture of methamphetamine, a controlled substance. After following the automobile for awhile, he stopped it on the highway. A search of the interior and trunk of the automobile revealed incriminating evidence. The driver, Jeffrey Berryman, and his passenger, Sharon Martinez, were later

charged with conspiracy to manufacture methamphetamine. At trial, Martinez moved to suppress the evidence on several Fourth Amendment grounds: The agent did not have reasonable suspicion to stop the automobile; he did not have probable cause to arrest her; and his search was neither incident to a lawful arrest nor justified by probable cause.[1] After the denial of her motion to suppress and her later conviction, she appeals. We affirm.

## I.

On March 19, 1985, Tommy Harr, an experienced special agent for the DEA, visited the chemical supply company of Aldrich Scientific in San Antonio. Aldrich Scientific sells chemicals to the public and Harr knew that they had previously supplied chemicals to persons engaged in the manufacture of methamphetamine. While in the company's office, Harr noticed a receipt for several chemicals on an employee's desk. From his experience and training, Harr knew that all the chemicals listed on the receipt were those used in the manufacture of methamphetamine and phenyl-2-propanone, also a controlled substance, and an immediate precursor to methamphetamine. The receipt did not list the buyer's name, but indicated that the purchase was made for cash that day. Harr asked the employee who had bought the chemicals and was told that the purchaser was the driver of the maroon Oldsmobile parked out front. Harr looked outside and saw Berryman closing the trunk of the Oldsmobile. Berryman and his passenger, Sharon Martinez, then drove away.

Harr followed them in his unmarked car. They stopped once at a gas station, but did not open the trunk. Maintaining his surveillance, Harr again followed them as they left the gas station. Harr soon realized that Berryman and Martinez were aware of his tailing: Berryman drove erratically, often slowing down and changing lanes; he once left the main highway only to reenter it later; and Martinez often looked back over her shoulder at Harr. After about twenty minutes of tailing and after Berryman turned onto I-35 heading north out of San Antonio, Harr summoned for a marked police car to stop the Oldsmobile. The police car and three or four other DEA cars arrived and surrounded the Oldsmobile on the side of the highway. The officers ordered Berryman and Martinez out of their car and patted them down for weapons. The two were not handcuffed and the officers' guns remained holstered.

The officers noticed a strong acidic odor coming from the clothes of Berryman, Martinez, and the trunk of the Oldsmobile. Harr associated the smell with that of clandestine methamphetamine laboratories that he had previously seized. He noticed also that the smell coming from Martinez's clothes was much stronger than that from Berryman or the Oldsmobile and could not be attributed to the chemicals purchased at Aldrich and believed to be in the trunk.

Harr took Berryman aside to question him. Berryman acknowledged that he had been to Aldrich and that he had been aware of Harr's surveillance. When asked why he purchased the chemicals, Berryman said that he had purchased them for someone else. When asked who that was, Berryman replied: "I cannot tell you. I fear for my life." Asked what he meant, Berryman answered: "I think they would kill me." Harr then advised Berryman and Martinez of their constitutional rights.

Harr began a search of the automobile. First, he opened the trunk and found the chemicals that were purchased at Aldrich Scientific. He directed Kevin Matheny, a San Antonio police officer assigned to the DEA's joint task force, to search the remainder of the Oldsmobile for the receipt from Aldrich and additional chemicals. On the floorboard underneath Martinez's seat, in plain view, Matheny saw a brown paper bag and several torn pieces of paper, which had apparently spilled from the bag. Upon examining these papers, officer Matheny

---

**1.** After the suppression hearing, Berryman entered a negotiated plea of guilty and was convicted on that plea. He does not join this appeal.

recognized them as part of a receipt from Aldrich. He and Harr recognized the remaining papers as part of a recipe for the manufacture of methamphetamine, containing a list of the ingredient chemicals, diagrams, and instructions. Matheny also found an automatic pistol, ammunition, and a hunting knife in the automobile. After the search, Harr brought Berryman and Martinez to his office where they were formally arrested and charged.

## II.

■ Our first inquiry is whether Harr lawfully stopped the Oldsmobile. We have no doubt that the stop was a "seizure" that implicates the Fourth Amendment prohibition against unreasonable searches and seizures. Not every seizure is an arrest, however, that must be justified by probable cause. In *Terry v. Ohio*,[2] the Supreme Court recognized that a reasonable suspicion of criminal activity based on contemporaneous observations may justify a temporary stop and detention for the purpose of investigating that suspicion, even though the officer does not have probable cause to believe that a particular crime has been committed. Whether a detention is an arrest or merely a *Terry-* stop depends on the "reasonableness" of the intrusion under all the facts. *United States v. Sharpe.*[3]

*Sharpe* is dispositive of this case. In *Sharpe,* a DEA agent on patrol observed a pickup truck and a car traveling together in an area frequented by drug traffickers. The pickup truck had a camper top with covered windows and appeared to be heavily loaded. After following the two vehicles for awhile, the agent summoned a marked patrol car to help stop the vehicles. When the police unit arrived, the two vehicles left the main highway and, after taking a circuitous route, reentered it. When a stop was attempted the two vehicles separated; the

agent stopped the car and the police officer stopped the pickup farther along the highway. The officer drew his gun, ordered the driver out of the truck, and patted him down for weapons. He detained the driver for fifteen minutes until the DEA agent arrived. At the scene, the DEA agent detected the smell of marijuana from the rear of the truck, opened the camper door, and found several bales of marijuana. The entire stop took about twenty minutes.

On review, the Court held that the detention of the driver was a proper investigative stop and not a de facto arrest.[4] In reaching its conclusion, the Court considered it "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[5] Further, it added: "A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing."[6]

■ We agree with the district court that the stop of Berryman and Martinez was an investigative stop that required only a reasonable suspicion of criminal activity. Agent Harr's suspicions were aroused for the first time at the offices of Aldrich and as the two were driving off. Because he did not know their names or where they were heading, the stop on the highway was a reasonable means of confirming or dispelling his suspicions. The method of the stop—blocking the Oldsmobile, ordering the occupants out of the car, and patting them down for weapons—is a reasonable means of effecting the stop and ensuring the safety of the officers and does not convert the stop into a de facto arrest.[7] Once he had stopped the Oldsmo-

**2.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**3.** 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

**4.** *Id.,* 470 U.S. at 682, 105 S.Ct. at 1573.

**5.** *Id.* at 686, 105 S.Ct. at 1575.

**6.** *Id.*

**7.** *See, e.g., United States v. Manbeck,* 744 F.2d 360, 377 (4th Cir.1984), *cert. denied sub nom. O'Hare v. United States,* 469 U.S. 1217, 105 S.Ct.

bile, Harr quickly pursued his investigation. During the entire stop, which lasted from fifteen to thirty minutes, Berryman and Martinez were not handcuffed nor placed in a squad car.[8]

The next question in our inquiry is whether Harr had a reasonable suspicion to believe that the occupants of the Oldsmobile were engaged in criminal activity. To pass muster, Harr's suspicion must have been based on specific and articulable facts and not mere hunches.[9] Second, we must gauge those facts not individually, but in their totality and as seen and interpreted by officers of Harr's experience.[10] Finally, the suspicion must justify the scope of the intrusion on privacy that results from the stop.[11]

The most prominent circumstance supporting the reasonableness of Harr's suspicion is Berryman's purchase of chemicals at Aldrich Scientific. The receipt listed the seven chemicals that Harr knew to be the ingredients for manufacturing phenyl–2–propanone and liquid methamphetamine. Although each of these chemicals has other, legitimate uses, Harr knew of no legit-

imate use for the particular *combination* of chemicals that Berryman purchased. We find that this observation, along with the other circumstances of the purchase,[12] is sufficient to justify Harr's suspicion that the occupants of the Oldsmobile intended to use the chemicals to manufacture methamphetamine.[13]

Martinez argues that even if Harr had reason to suspect that Berryman was engaged in criminal activity, Harr had no reason to suspect Martinez. Therefore, she argues, the stop and detention of her was unreasonable. Although Martinez did not purchase the chemicals, she did accompany Berryman to Aldrich. This circumstance does provide some limited support for suspecting her to be an accomplice of Berryman. Moreover, we know of no rule that prohibits law enforcement officers from stopping a vehicle because they do not have reasonable suspicions concerning every occupant of that vehicle. The question that we must answer under *Terry* is whether the suspicion of the officer justified the intrusion that Martinez suffered. Harr may have been able to stop Berryman

1197, 84 L.Ed.2d 342 (1985); *United States v. Vargas,* 643 F.2d 296, 298 (5th Cir. Unit B 1981); *United States v. Vanichromanee,* 742 F.2d 340, 344 (7th Cir.1984); *United States v. Jones,* 759 F.2d 633, 637–41 (8th Cir.), cert. denied, — U.S. —— 106 S.Ct. 113, 88 L.Ed.2d 92 (1985).

**8.** *Cf. United States v. Manbeck,* 744 F.2d 360, 377 (4th Cir.1984), cert. denied sub nom. *O'Hare v. United States,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985), in which the court held that an automobile stop was a non-arrest detention although the fact that the suspects were detained in the rear of a police car made the issue "more problematic."

**9.** *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879.

**10.** *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *United States v. Gomez,* 776 F.2d 542, 546 (5th Cir.1985); *United States v. Miranda-Perez,* 764 F.2d 285, 289 (5th Cir.1985).

**11.** *United States v. Cortez,* 449 U.S. 411, 421, 101 S.Ct. 690, 696, 66 L.Ed.2d 621 (1981); *Terry,* 392 U.S. at 29, 88 S.Ct. at 1883.

**12.** Berryman had purchased over $500 of chemicals for cash from a company that Harr knew

was supplying clandestine methamphetamine laboratories with chemicals. This circumstance further supports Harr's suspicion. We decline to give much weight, however, to Berryman's evasive and erratic driving as support for Harr's suspicion. When such behavior is in response to being followed by a plainclothes officer in an unmarked car, the meaning of the behavior is ambiguous. *United States v. Ortega-Serrano,* 788 F.2d 299, 302 (5th Cir.1986); *United States v. Jones,* 619 F.2d 494, 498 (5th Cir.1980).

**13.** Martinez argues that the *Terry* justification for investigative stops extends only to observations of crimes that are in process or that appear imminent and that the mere purchase of chemicals, a lawful act, does not give rise to a suspicion that a crime is in process or imminent. Without expressing any opinion on whether her argument is a proper interpretation of *Terry,* we find that it is misplaced. 21 U.S.C. § 846 (1982) prohibits *conspiracies* or *attempts* to manufacture methamphetamine. Therefore, Harr did observe Berryman and Martinez in the process of committing a crime because the purchase of chemicals was the final act in the completed crime of conspiracy with which both were charged and convicted.

alone at Aldrich. He might also have waited until Berryman and Martinez reached their destination where he could question Berryman without detaining Martinez. We were directed by the Court in *Sharpe*, however, "to consider whether the police are acting in a swiftly developing situation, and in such cases ... not indulge in unrealistic second-guessing." [14] We have found that Harr and the accompanying agents and officers acted reasonably in stopping the Oldsmobile. We do not see any reason to find otherwise, merely because Berryman had a passenger with him. When he approached the car, Harr detected a strong odor on Martinez, an odor he recognized as the same as that from clandestine methamphetamine laboratories. This observation, made immediately after stopping the vehicle, further justified the temporary detention of Martinez until Harr could complete his investigation.

### III.

■ Martinez contends that Harr did not have probable cause to arrest her and, thus, any evidence derived from her arrest must be suppressed. To resolve her contention, we must determine the point at which she was arrested and whether probable cause existed *at that point.* Probable cause to arrest exists when the facts and circumstances known at the time are sufficient to cause a reasonable law enforcement officer to believe that a crime has been or is being committed.[15] Although the initial stop of the suspect may have been justified only by reasonable suspicion, additional facts gathered from that stop may strengthen that suspicion into probable cause.[16]

■ Here, the initial stop was not an arrest. Nothing that Harr or his fellow agents did during the first few minutes of that stop converted it into an arrest of Martinez. After the Oldsmobile was stopped, Harr directed his attention to Berryman. After Berryman refused to name the person for whom he had bought the chemicals, Harr directed his attention to the search of the Oldsmobile. Only after the search of the car, and the finding of the torn papers under Martinez's seat, did Harr question Martinez. The only significant change in the scope of her detention occurred when Harr decided to take her and Berryman to his office. The removal of the suspect from the scene of the stop to police headquarters usually marks the point at which an investigative stop becomes a de facto arrest.[17] In the circumstances of this case, we find that Harr arrested Martinez when he proceeded to take her to his office.

At the point of her arrest, Harr had probable cause to believe that Martinez was engaged in criminal activity. Harr had recognized the strong odor on the clothes. At the suppression hearing, the parties strongly contested the question whether the odor on Martinez was from riding with Berryman, who had handled the chemicals at Aldrich and who also had an odor on him. The trial court found that, because Martinez had not handled the chemicals, and because her odor was so much stronger than that from Berryman or the car, "she had to be around the chemicals for a long time." [18] Additionally, under Martinez's seat, officer Matheny found the torn copy of the Aldrich receipt and the torn recipe for the manufacture of meth-

**14.** *Sharpe,* 470 U.S. at 686, 105 S.Ct. at 1576.

**15.** *United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir.), *cert. denied sub nom. Hebert v. United States,* —— U.S. ——, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

**16.** *United States v. Head,* 693 F.2d 353, 358 (5th Cir.1982).

**17.** *Hayes v. Florida,* 470 U.S. 811, 815–16, 105 S.Ct. 1643, 1646–47, 84 L.Ed.2d 705 (1985); *see also Sharpe,* 470 U.S. at 692 n. 2, 105 S.Ct. at

1573 n. 2 (Marshall, J., concurring); *Florida v. Royer,* 460 U.S. 491, 505, 103 S.Ct. 1319, 1328, 75 L.Ed.2d 229 (1983); *Dunaway v. New York,* 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979).

**18.** We should accept the trial court's findings of fact at the suppression hearing unless clearly erroneous. *United States v. Gomez,* 776 F.2d 542, 548 (5th Cir.1985).

amphetamine and phenyl-2-propanone. Finally, when questioned by Harr, Martinez said that the car was her boyfriend's, who allowed her to drive it. These facts were sufficient to give Harr probable cause to believe that Martinez was involved with Berryman in planning to manufacture methamphetamine.

## IV.

■ Martinez challenges the search of the automobile as not incident to a lawful arrest nor incident to probable cause. The government initially challenges her standing, as a passenger, to contest the search of the car. At the suppression hearing, Martinez's boyfriend, the owner of the car, testified that she was using the car with his permission. We are satisfied that, as lawful possessor of the car, Martinez has standing to challenge the search.[19]

Because we have decided that Berryman and Martinez were not arrested until after the search, the search cannot be justified as incident to a lawful arrest.[20] In *United States v. Ross*,[21] however, the Supreme Court held that police officers may search an automobile without a warrant if they have probable cause to believe that contraband or evidence of a suspected crime is hidden inside. The scope of the search may be as extensive as that which a magistrate could authorize, including a search of the inside of the trunk and closed containers, provided that probable cause exists to believe that contraband or evidence may be

hidden in the compartments and containers searched.[22]

■ We find that Harr had probable cause to believe that that seizable contraband and evidence was in the Oldsmobile. At the stop, Berryman admitted that he had purchased chemicals at Aldrich, had seen Harr there, and was aware that Harr was following him. When asked what he intended to do the with the chemicals, Berryman said he had bought them for a friend. Significantly, he could not identify that friend because he "feared for his life." This statement is indicative of criminal involvement. When Harr approached Martinez, he noticed the strong odor on her clothes. Because he had kept the car in his sight since it had left Aldrich and because the odor was so strong, he knew that Martinez did not acquire it from the chemicals that Berryman had purchased, but that she probably had been exposed to the manufacture of methamphetamine. To the trained and experienced law enforcement officer, the odors associated with drugs and drug trafficking often give rise to probable cause.[23] We find that from all the facts known to Harr—the purchase of chemicals, the strong odor on Martinez's clothes, and Berryman's responses to Harr's questions—Harr had probable cause to search the Oldsmobile.

## V.

■ Martinez's final contention on appeal is that the trial court committed reversible error by admitting into evidence the pistol found in the back seat of the

**19.** *See United States v. Rose*, 731 F.2d 1337, 1343 (8th Cir.), *cert. denied*, 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984); *United States v. Griffin*, 729 F.2d 475, 483 n. 11 (7th Cir.), *cert. denied*, 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984).

**20.** Under *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), police may conduct a limited search of an automobile incident to the lawful arrest of its occupant.

  Additionally, we are not persuaded by the government's argument that the search was a valid inventory search. The district court made

no finding on this issue. Our review of the record indicates that the sole purpose of the search was to find chemicals and other evidence.

**21.** 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

**22.** *Id.*, 456 U.S. at 825, 102 S.Ct. at 2173.

**23.** *See, e.g.*, *United States v. Gordon*, 722 F.2d 112, 114 (5th Cir.1983); *United States v. Medina*, 543 F.2d 553 (5th Cir.1976) (per curiam), *cert. denied*, 429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 563 (1977).

Oldsmobile. She argues that whatever relevance the pistol may have to her guilt is outweighed by the undue prejudice caused by its admission.[24] This Court has recognized that firearms are "tools of the trade" of those engaged in illegal drug activities and are highly probative in proving criminal intent.[25] Furthermore, the inference of an illegal enterprise that arises from the pistol's presence supports the conspiracy theory on which Martinez was tried. The trial judge did not abuse his discretion in admitting the handgun into evidence.

## VI.

The Fourth Amendment is not a protection from all searches and seizures, but only *unreasonable* searches and seizures. Moreover, the scope of the protection afforded an individual in his automobile is substantially less than that afforded him in his home. The Supreme Court has held that a reasonable suspicion based on articulable facts justifies an investigatory stop of an automobile. After that stop, probable cause justifies a warrantless search. Here, the totality of the circumstances, as seen and interpreted by Agent Harr, was sufficient to justify the stop of the automobile, the later search of that automobile, and the eventual arrest of Martinez.

The judgment of the district court is AFFIRMED.

**24.** *See* Fed.R.Evid. 403.

**25.** *United States v. Perez,* 648 F.2d 219, 224 (5th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981).