**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Isabel G. HERNANDEZ,**
**Defendant-Appellant.**

No. 87–5504.

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1987.

---

Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for Hernandez.

Roy T. Englert, Jr., U.S. Dept. of Justice, Washington, D.C., Helen M. Eversberg, U.S. Atty., Michael R. Hardy, San Antonio, Tex., Thomas E. Booth, Atty., Appellate Sec., Crim. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Before GEE, JOHNSON, and HILL, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant Isabel Guajardo Hernandez appeals from the district court's judgment, contending principally that the district court erred in its probable cause and arrest determinations. We affirm.

## I. *Facts and Procedural History*

This appeal concerns events at the San Antonio Fiesta carnival during the waning hours of April 20 and the wee hours of April 21, 1985. Witness Nicholas Marone was working at the carnival as a novelties vendor. Two men approached Marone. One of the men asked Marone to change a twenty dollar bill. After taking and examining the bill, Marone refused to change it because he thought the bill a phony. Marone returned the phony bill, and the two men departed. Marone then reported the incident to the San Antonio police.

Sergeant Garland Gaston of the San Antonio Police Department informed patrolmen Ernest Douglas Gay and Michael Villanueva of the bill-passing incident and supplied them with Marone's description of the two suspects. Twenty minutes later, Officers Gay and Villanueva spotted defendant Isabel Guajardo Hernandez and a companion as matching Marone's description. As the officers approached, Hernandez and his companion started away. The officers called to the suspects, asking them to come back and answer some questions. The suspects returned. Officers Gay and Villanueva were clearly identifiable as police officers. Both suspects were asked to show the officers any money they had. After the suspects had produced some money, Officer Villanueva conducted a patdown search or frisk of Hernandez for weapons. Officer Villanueva felt "a crumpled piece of paper" in Hernandez' pant pocket and asked him what the paper was. Hernandez replied that it was nothing and twice refused to show the paper to Officer Villanueva. The officer then reached into Hernandez' pocket and retrieved a black and white mimeograph copy of a twenty dollar bill.

The officers took Hernandez and his companion along to the police command post for the carnival. Once at the command post, Officer Villanueva read Hernandez and companion "their rights." The two officers, Hernandez, and companion then waited while Sergeant Gaston summoned witness Marone. Marone accompanied Officer Gaston to the command post and identified as the perpetrators Hernandez and companion, who were placed in jail.

Hernandez was charged by indictment with one count of conspiracy to pass counterfeit notes and three counts of passing or attempting to pass counterfeit notes. Hernandez moved the district court to suppress the evidence resulting from Officer Villanueva's search of Hernandez. After conducting an evidentiary hearing, the district court denied the motion to suppress. A jury found Hernandez guilty of attempting to pass a counterfeit twenty dollar note to Marone. 18 U.S.C. § 472. Hernandez was acquitted of the remaining three counts.

On his first appeal, Hernandez challenged the district court's suppression ruling. A panel of this Court noted the district court's conclusion that Officers Gay and Villanueva had conducted an investigative stop, resting at least on reasonable suspicion, and a protective search for weapons in connection with that stop. The prior panel preliminarily accepted that conclusion and ruled that Officer Villanueva had exceeded the permissible scope of a protective search for weapons by searching Hernandez' pocket. The panel nevertheless remanded for further factfinding in support of other possible legal grounds justifying Officer Villanueva's search of Hernandez' pocket. *United States v. Hernandez*, 792 F.2d 1120 (5th Cir.1986) (unpublished).

On remand, the district court determined, among other things, that Officer Villanueva had probable cause to arrest Hernandez in advance of the pat-down search, that Hernandez was under custodial arrest immediately after the search, and that the search was justified as an incident of a lawful custodial arrest. The district court therefore concluded that the evidence resulting from the search had been properly admitted at trial. Hernandez again appeals. We affirm.

## II. *Discussion*

### A.

Hernandez first contends that the district court erred in determining that there was probable cause to arrest Hernandez before the search of his person took place. We uphold the district court's determination.

■ The "existence of probable cause is a question of law" greatly dependent "upon factual findings."[1] While the legal question is governed by the totality of the circumstances,[2] purely factual findings based on live testimony at a suppression hearing must be accepted "unless they are clearly erroneous or influenced by an incorrect view of the law."[3]

■ Probable cause to arrest "exists when the facts and circumstances known at the time are sufficient to cause a reasonable law enforcement officer to believe that a crime has been or is being committed."[4] Generally, probable cause to arrest for the offense of passing a counterfeit note is established by circumstances showing the passing of a counterfeit note coupled with an identification of the individual who passed the note.[5]

■ Here, Marone told the San Antonio police that there had been a passing or attempted passing of a counterfeit twenty dollar note. Hernandez seeks to undermine this circumstance by challenging Marone's reliability. Generally, the reliability of an identified bystander or victim who witnesses crime need not be established.[6] Hernandez challenges not Marone's motivation to tell the truth, but argues more narrowly that the Government has not shown that Marone possessed expertise in recognizing a bill as counterfeit. Nevertheless, it was known to the police that

1. *Hernandez*, No. 85–2788, slip op. at 8 (5th Cir. June 20, 1986) [792 F.2d 1120 (table)]; *see also United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Morgan*, 799 F.2d 467, 468 (9th Cir. 1986); *see United States v. $38,600.00 in U.S. Currency*, 784 F.2d 694, 697 (5th Cir.1986); *United States v. Freeman*, 685 F.2d 942, 948 (5th Cir.1982); *United States v. Minis*, 666 F.2d 134, 138 (5th Cir.), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982).

2. *United States v. Tarango-Hinojos*, 791 F.2d 1174, 1176 (5th Cir.1986); *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir.1985), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 65, 88 L.Ed.2d 52 (1985).

3. *Tarango-Hinojos*, 791 F.2d at 1176; *see also United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984).

4. *United States v. Martinez*, 808 F.2d 1050, 1055 (5th Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987); *see also United States v. De Los Santos*, 810 F.2d 1326, 1336 (5th Cir.1987); *United States v. Savage*, 564 F.2d 728, 732 (5th Cir.1977).

5. *Savage*, 564 F.2d at 733; *United States v. Maryland*, 479 F.2d 566, 569 (5th Cir.1973); *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1311, 79 L.Ed.2d 709 (1984).

6. *United States v. Phillips*, 727 F.2d 392, 397 (5th Cir.1984).

Marone was a carnival vendor who necessarily dealt with currency. Further, by immediately rejecting the bill once proffered and promptly notifying the police, Marone displayed confidence in his own ability to recognize the instant bill as counterfeit. Marone further conveyed this confidence by reporting to the police that the proffered paper was "an obviously counterfeit twenty dollar bill." We uphold the district court's determination that the circumstances would justify a reasonable law enforcement officer in believing there was a fair probability [7] that a counterfeit note had been passed.[8]

▮ Marone also supplied a detailed description of the two individuals who had attempted to pass the note. Officers Gay and Villanueva testified that Marone provided a description bearing upon the ethnic background, gender, attire (color and type of coat, tie, shirt, and hat), relative age, stature, facial hair, hair color, and hair length of the two individuals.[9] The discrepancies Hernandez has striven to develop between the two officers' accounts of Marone's description either do not exist or are too minor to undermine Marone's description as "a fairly good picture" [10] of the suspects' appearance. Marone's description, moreover, encompassed two individuals walking together in the thinning carnival crowd, and Hernandez and companion were identified together.[11] Further, Officers Gay and Villanueva identified Hernandez and companion on the carnival grounds where the bill had allegedly been passed and only a short while after the incident. The officers did not mistakenly stop other individuals before making their identification, and both officers readily matched Hernandez and companion to the description furnished by Marone.[12] We uphold the district court's determination that the circumstances would justify a reasonable law enforcement officer in believing there was a fair probability that Hernandez and companion were correctly identified as the individuals who attempted to pass a counterfeit note.

▮ Finally, Hernandez challenges the district court's probable cause determination because Sergeant Gaston, who had received Marone's crime report,[13] did not testify at the suppression hearing. The district court had necessarily to rely upon the testimony of Officers Gay and Villanueva about the information given by Marone to Sergeant Gaston. Hernandez contends that the testimony of these officers was in this respect inadmissible hearsay. The contention is unfounded. Wholly apart from the absence of any objection to this testimony before the district court, it is settled that "there should be no automatic rule

7. See Antone, 753 F.2d at 1304.

8. See United States v. Burnett, 526 F.2d 911, 912 (5th Cir.), cert. denied, 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976); Morrison v. United States, 491 F.2d 344, 345–46 (8th Cir.1974); Maryland, 479 F.2d at 569; United States v. Masini, 358 F.2d 100, 101–02 (6th Cir.1966).

9. Compare United States v. Pollack, 739 F.2d 187, 190 (5th Cir.1984).

10. Pollack, 739 F.2d at 190.

11. See United States v. Hurt, 476 F.2d 1164, 1169–70 (D.C.Cir.1973).

12. See Pollack, 739 F.2d at 190–91 & n. 3.
   Hernandez seeks to undermine Officers Gay's and Villanueva's identification of the two suspects by emphasizing that these officers were relying upon Marone's description as related by Sergeant Gaston. Hernandez reasonably infers from the record that it was Sergeant Gaston who received Marone's report.

The record clearly shows, however, that Sergeant Gaston was present on the carnival grounds when Officers Gay and Villanueva first encountered Hernandez and companion. Before asking questions, the officers called over Sergeant Gaston, and he confirmed that Hernandez and companion matched Marone's description. This should be enough to dispose of Hernandez' contention here. Nevertheless, we note that Hernandez correctly contends that, if the officers had received the description directly from Marone, that might be a further circumstance supporting probable cause. See Pollack, 739 F.2d at 190. It is by no means necessary, however: An arrest is "proper even though the arresting officer ... received the information [establishing probable cause] from another officer." De Los Santos, 810 F.2d at 1336; see also United States v. Preston, 608 F.2d 626, 632 n. 5 (5th Cir.1979), cert. denied, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980).

13. Supra note 12.

against the reception of hearsay evidence" in suppression hearings.[14]

## B.

Hernandez next contends that the district court erred in determining that Hernandez was under custodial arrest immediately after the search. We uphold the district court's determination.

Case law has recognized

three distinct levels or tiers of police-citizen contact within the context of the fourth amendment. On the first level is mere communication between a citizen and an officer, involving no element of detention or coercion. Such contact does not implicate the fourth amendment. On the second level are brief detentions or investigatory stops which must be supported by "reasonable suspicion" on the part of the detaining officer based on "specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant an intrusion." Full scale arrests occupy the third tier, involving the types of restrictions on liberty imposed by formal custody.[15]

There is no dispute that Hernandez was seized within the meaning of the second tier sometime before the search. Hernandez challenges the district court's determination that the nature of the seizure escalated into a third tier *"de facto arrest"* [16] immediately after the search.

■ The level or tier, such as arrest, into which a particular police-citizen contact should be placed presents a question of

law.[17] On the other hand, when an arrest began has been treated as a factual question [18] subject to the clear error standard.[19] It is perhaps most useful to say that the arrest determination, like the probable cause determination, presents a question of law greatly dependent upon factual findings.

The instant case presents the following sequence of events. Hernandez was stopped and asked questions. A superficial frisk for weapons was conducted during which Officer Villanueva felt crumpled paper in Hernandez' pant pocket. Hernandez twice refused to show the paper in his pocket. Officer Villanueva then thrust his hand into and searched Hernandez' pocket. As soon as the counterfeit twenty dollar bill was withdrawn from Hernandez' pocket, the officers removed Hernandez from the carnival grounds to the police command post. Once at the command post, Hernandez was given his rights and held until Marone came to the post and identified Hernandez as the passer. At this point, Hernandez was put in jail and placed under what the officers were willing to call formal arrest.

■ The district court was clearly justified in designating Hernandez' removal from the carnival grounds to the command post as the time when the level of police intrusion escalated into a de facto custodial arrest. "The removal of the suspect from the scene of the stop to police headquarters usually marks the point at which an investigative stop becomes a de facto arrest." [20]

---

**14.** *United States v. Matlock,* 415 U.S. 164, 175, 94 S.Ct. 988, 995, 39 L.Ed.2d 242 (1974); *see also United States v. Sanchez,* 689 F.2d 508, 509 n. 2 (5th Cir.1982).

**15.** *United States v. Hanson,* 801 F.2d 757, 761 (5th Cir.1986) (citations omitted; quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *see also United States v. Glass,* 741 F.2d 83, 85 (5th Cir.1984).

**16.** *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).

**17.** *See United States v. Lara,* 638 F.2d 892, 898 n. 11 (5th Cir. Unit B 1981); *United States v. Bowles,* 625 F.2d 526, 531 n. 4 (5th Cir.1980); *United States v. Robinson,* 625 F.2d 1211, 1216–

**17** (5th Cir.1980); *United States v. Berd,* 634 F.2d 979, 985 n. 8 (5th Cir. Unit B 1981).

**18.** *United States v. Worthington,* 544 F.2d 1275, 1279 (5th Cir.), *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); *see also Sibron v. New York,* 392 U.S. 40, 67, 88 S.Ct. 1889, 1905, 20 L.Ed.2d 917 (1968).

**19.** *See Preston,* 608 F.2d at 631 n. 4; *see generally supra* note 3 and accompanying text.

**20.** *Martinez,* 808 F.2d at 1055 (footnote omitted); *see also United States v. Robinson,* 414 U.S. 218, 221 n. 2, 94 S.Ct. 467, 470 n. 2, 38 L.Ed.2d 427 (1973); cases cited in *Martinez,* 808 F.2d at 1055 n. 17; *United States v. Berry,* 670 F.2d 583, 604 (5th Cir. Unit B 1982) (en banc).

It is well established that a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."[21] This Court has stated that "the events leading up to the arrest [may occur] in such close sequence that it is immaterial that the arrest occurred later in time than" the search incident to that arrest.[22] This view was confirmed in *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980): "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." The virtual simultaneity of the present arrest of Hernandez and the search of his person certainly qualifies the arrest as following "quickly on the heels of the challenged search."

 Hernandez observes that the *Rawlings* Court employed the phrase *formal arrest*[23] and contends that only a formal arrest may justify an immediately preceding incidental search. We doubt that the *Rawlings* principle is so limited. This particular in the statement of the principle undoubtedly reflects the fact that the arrest following the search in that case was a formal arrest.[24] A custodial arrest based on probable cause is a reasonable intrusion under the fourth amendment whether the arrest is de facto or formal.[25] That intrusion being lawful, an incidental search requires no additional justification, even though the justifying arrest, whether de facto or formal, immediately follows the search.

### III. *Conclusion*

We uphold the district court's determination that there was probable cause to arrest Hernandez before the search of his person took place. We further uphold its determination that Hernandez was in custodial arrest immediately after the search. Finally, we conclude that the search was incident to and justified by the immediately following custodial arrest. In so doing, we emphasize that the "fruits of the search of [Hernandez'] person were, of course, not necessary to support probable cause to arrest."[26] The judgment of the district court is therefore

AFFIRMED.

---

21. *Robinson*, 414 U.S. at 235, 94 S.Ct. at 477; *see also United States v. Ruigomez*, 702 F.2d 61, 66 (5th Cir.1983); *United States v. Rice*, 652 F.2d 521, 526 (5th Cir. Unit A 1981).

22. *United States v. Squella-Avendano*, 447 F.2d 575, 583 (5th Cir.), *cert. denied*, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971); *see also Burnett*, 526 F.2d at 913; *Thornton v. Beto*, 470 F.2d 657, 659 (5th Cir.1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1560, 36 L.Ed.2d 313 (1973); *United States v. Brookins*, 434 F.2d 41, 45 (5th Cir. 1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811 (1971); *Henderson v. United States*, 405 F.2d 874, 875 (5th Cir.1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *but cf. United States v. Fontecha*, 576 F.2d 601, 605 n. 4 (5th Cir.1978) ("Because the search in the instant case preceded the arrest, we have no occasion to consider the search incident to arrest exception to the warrant requirement").

23. *See also Burnett*, 526 F.2d at 913 ("The propriety of the search is unaffected by the fact that it immediately preceded rather than followed the formal arrest").

24. *See Rawlings*, 448 U.S. at 101, 100 S.Ct. at 2559.

25. *Sibron*, 392 U.S. at 67, 88 S.Ct. at 1905.

26. *Rawlings*, 448 U.S. at 111 n. 6, 100 S.Ct. at 2564 n. 6.