**Bertice Gene CONNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12-87-00224-CR.**

Court of Appeals of Texas,
Tyler.

June 30, 1988.

Bill Warren, Center, for appellant.

John Walker, Dist. Atty., Center, for appellee.

BILL BASS, Justice.

This is an appeal from a conviction for the manufacture of at least 400 grams of methamphetamine. The jury convicted Bertice Conner of this offense and assessed his punishment at eighteen years' confinement. We reverse and acquit.

Just before midnight on Sunday, March 1, 1987, Texas Department of Public Safety (DPS) Narcotics Officer Rickey Allen, Shelby County Sheriff Paul Ross, and two other officers raided Conner's house near Center, Texas, pursuant to a search warrant and seized a quantity of methamphetamine along with chemicals and equipment used in the drug's production.

Earlier that day an unnamed informant told Allen about the obnoxious but distinctive odor resulting from methamphetamine

production emanating from Conner's house located on Highway 96 three miles north of Center. Acting immediately on this information, Allen visited the tract adjacent to the Conner home and walked to within twenty-five yards of the house. Based on his experience that the distinctive odor he smelled at Conner's home was also the same odor produced during the manufacture of methamphetamine, Allen obtained a warrant to search the appellant's residence. The officers discovered a glass jug containing 4.37 pounds of liquid methamphetamine solution, two baggies containing 210.5 grams and 5.2 grams of the drug respectively, and assorted equipment used in the production of methamphetamine. The officers then arrested Conner, Eugene Stone, and Janelle Coats for the manufacture of methamphetamine.

■ The appellant brings four points of error. In his first point of error, Conner contends that the narcotics officer's recognition of the odor was not sufficient probable cause to justify the issuance of a search warrant. No Texas case has addressed the issue of whether a controlled substance's odor constitutes probable cause for a search warrant's issuance. However, the odor of marijuana emanating from inside a vehicle provides sufficient probable cause for a warrantless search. *Moulden v. State*, 576 S.W.2d 817 (Tex.Cr.App.1978). The standard of probable cause in a warrantless search is no less stringent than that required to be shown to a magistrate for the issuance of a search warrant. *Washington v. State*, 660 S.W.2d 533, 535 (Tex.Cr.App.1983). "If an affiant, in seeking a search warrant, testifies to the presence of odors and a magistrate finds the affiant is qualified to know the odor, the evidence will be considered evidence of a persuasive character in obtaining a warrant." *Aquilar v. State*, 662 S.W.2d 436, 437–38 (Tex.App.—Corpus Christi 1983, no pet.). The Fifth Circuit Court of Appeals has held that a DEA agent had probable cause to conduct a warrantless search of an automobile believed to contain chemicals purchased for the manufacture of methamphetamine based on the strong odor of these chemicals on the passenger's clothes.

*U.S. v. Martinez*, 808 F.2d 1050, 1056 (5th Cir.1987).

A drug sniffing dog's signal that a piece of luggage contained narcotics provided sufficient probable cause for the issuance of a search warrant when the owner of the luggage refused to allow a customs officer to check it. *Accaria v. State*, 661 S.W.2d 249 (Tex.App.—Houston [1st Dist.] 1983, no pet.). If a magistrate may find probable cause to issue a search warrant based only upon a trained dog's sense of smell, surely probable cause may also be found from the detection of a narcotic's odor by a trained and experienced narcotics officer. Appellant's first point of error is overruled.

■ In his second point of error, Conner contends that the trial court erred in admitting the evidence seized at his house because the affidavit failed to sufficiently inform the magistrate when the narcotics officer detected the methamphetamine smell in order to justify the magistrate's conclusion that the contraband to be seized was likely to be on the premises at the time the warrant was issued. "[T]he facts in an affidavit must be so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at the time." *Jones v. State*, 579 S.W.2d 240, 242 (Tex.Cr.App.1979). DPS Narcotics Officer Allen stated in his affidavit that a confidential informant told him of the strong odor emanating from Conner's house on March 1, 1987. Allen also stated that he personally smelled the distinctive methamphetamine odor later that day about 25 yards from Conner's house. Because Allen received his information on the same day he obtained and executed the search warrant, we hold that it appears from the affidavit that the act upon which probable cause was based occurred within a reasonable time before the affidavit was prepared. Appellant's second point of error is overruled.

■ Conner's third and fourth points of error will be addressed together since both are intertwined. In his third point of error, he contends that the trial court erred in refusing to define the terms "adulterants" and "dilutants" in the jury charge. He

argues in his fourth and final point that there is insufficient evidence to support his conviction for the manufacture of greater than 400 grams of methamphetamine.

The State's chemist, John Beene, testified that the glass jug containing 4.37 pounds or 1984 grams of liquid consisted of only two percent (2%) methamphetamine, and the baggie containing 210.5 grams of material consisted of only forty-seven percent (47%) methamphetamine. He also testified that although he did not test the second baggie's content for drug purity, its 5.2 grams probably consisted of only fifty-percent (50%) methamphetamine. Beene further stated that the amount of methamphetamine actually contained in the glass jug and the two baggies totaled only about 140 grams. Explaining the reasons for appellant's low drug purity, Beene stated that Conner's methamphetamine did not appear to have been cut with other substances, but that the other substances which lowered the purity of the drug were by-products of the manufacturing process. He described the product as being just a poor grade of methamphetamine.

Article 4476–15 § 4.03(b) provides that the aggregate weight of any controlled substance includes any adulterant or dilutants. The State contends that the by-products are adulterants and their weight should be added to the weight of the methamphetamine in order to determine the weight of the controlled substance seized. The appellant argues that the weight of the by-products should not be added to the weight of the methamphetamine since the by-products are not a cutting agent but part of the manufacturing process.

The argument was resolved in appellant's favor by the Court of Criminal Appeals in the recent cases of *McGlothin v. State*, 749 S.W.2d 856 (Tex.Cr.App.1988) and *Engelking v. State*, 750 S.W.2d 213 (Tex.Cr.App.1988). The Court of Criminal Appeals reversed convictions for possession of at least 400 grams of methamphetamine because in each case the appellant possessed less than 400 grams when the by-products were removed and their weight not added to the weight of the metham-

phetamine. In both cases the evidence showed that the remaining solution was a by-product of the manufacturing process and not an agent used to increase the bulk or quantity of the final product. In *McGlothin*, the Court of Criminal Appeals defined adulterants and dilutants as follows:

[W]ithin the field of drugs and controlled substances, "adulterants" and "dilutants" are compounds, substances or solutions added to the controlled substance with the intent to increase the bulk of the product. Or, increase the quantity of the final product "without affecting its activity." Thus, while the addition of an adulterant or dilutant may affect the controlled substance in a different manner, each ultimately increases the bulk of the final product.

*McGlothin*, at 860.

In this case, there is no evidence suggesting that the remainder of the substances contained in the glass jug and the two baggies contained any substance intended to increase the bulk or quantity of the final product, methamphetamine. Had the jury been given the *McGlothin* definitions of adulterants and dilutants, the jury would have had no evidence with which to convict Conner of the manufacture of more than 400 grams of methamphetamine. The appellant's third and fourth points of error are sustained.

Therefore, the judgment of the trial court is reversed, and the cause is remanded to the trial court with instruction to enter a judgment of acquittal to the offense of manufacture of methamphetamine over 400 grams.