UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-20482
SUMMARY CALENDAR
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CEDRIC DEMONT LYNCH

Defendant - Appellant

_____

Appeal from the United States District Court for the
Southern District of Texas
(H-01-CR-185-1)
_____

January 2, 2003

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

In this appeal we review a district court's bench trial conviction of Defendant Cedric Demont Lynch, on stipulated facts, for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922 (g)(1), 924(a)(2). For the following reasons, we affirm the district court's judgment.

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-1-

I.

On January 17, 2001, members of the Pasadena Police Department's Direct Action Response Team were conducting surveillance of Robert Tanner, a burglary suspect, at an apartment complex in Pasadena, Texas. Detectives David Matlock and Randall Merritt were observing Tanner from inside an unmarked, white Chevrolet Blazer, which was parked in the apartment complex's parking lot. Police had information suggesting that some of Tanner's stolen property had been taken to Apartment Number 96, where an individual by the name of Cedric was living. Cedric was suspected of purchasing some of the stolen items in exchange for narcotics.

During the surveillance, officers observed Tanner repeatedly walking back and forth from Apartment #96 to a blue Plymouth Caravan, accompanied by an individual later determined to be Cedric Lynch.

As the officers continued their surveillance, Lynch and an Hispanic male who was sitting in the driver's seat both situated themselves in the vehicle as if preparing to leave. At the time, Tanner was walking towards the van. While walking to the van, Tanner apparently noticed the undercover agents; he then turned around and began walking back toward the apartment complex at a rapid pace. The officers subsequently moved in.

Tanner was arrested and both Lynch and the Hispanic male were detained. Officer Matlock stated that, as the events were unfolding, he observed Lynch make a motion that was consistent with throwing an object in the back of the van. After arresting Tanner, Officer Matlock found crack cocaine on the rear floorboard of the van behind the driver's seat. Officer Matlock then told other officers to further detain Lynch for possible narcotics investigation. Although Lynch was never told he was under arrest, he was handcuffed and taken to jail.

After the situation in the parking lot was resolved, Chemetria Robinson, who lived with Lynch and their children in Apartment Number 96, consented to a search of their apartment. A Mossberg 12-gauge shotgun was found during the search.

After spending the night in jail, Lynch spoke with narcotics officers about the drugs found in the van. During a subsequent interview with police, Lynch talked with other officers about the shotgun found in the apartment, leading ultimately to a statement by Lynch admitting ownership of the gun.

Lynch had previously been convicted of a felony drug offense in 1992, and after it was determined that the seized shotgun was manufactured in Connecticut and had been transported in interstate commerce, Lynch was indicted for being a felon in possession of a firearm.

Lynch filed a motion to suppress the shotgun and any statements he made while he was being detained. The district court, after holding a hearing on the issue, denied the motion to suppress. The district court found that, because officers had seen Lynch make a suspicious move toward the rear of the van, the officers had probable cause to arrest Lynch.

Lynch was convicted following a bench trial on stipulated facts, including the statement Lynch unsuccessfully sought to suppress. Lynch was sentenced to 27 months in prison and three years of supervised release. Lynch then filed a timely notice of this appeal.

II.

On appeal, Lynch argues that probable cause was lacking at the time of his arrest, and that, therefore, the district court erred in denying his motion to suppress. In an appeal from the denial of a motion to suppress, this Court reviews legal questions de novo and factual findings for clear error. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). In addition, "[t]he

evidence presented at a pre-trial hearing on a motion to suppress is viewed in the light most favorable to the prevailing party." *United States v. Inocencio*, 40 F.3d 716, 721 (5th Cir. 1994). This Court may affirm the district court's judgement on any grounds supported by the record. *See United States v. McSween*, 53 F.3d 684, 687 n.3 (5th Cir. 1995).

Lynch argues that he was placed under arrest at the time he was taken from the van at gunpoint. He submits that, because the officers did not have probable cause to arrest him at that time, his arrest was unlawful. According to Lynch, because his arrest was unlawful, his statement should be suppressed due to the fact that "the taint of the illegal arrest was not sufficiently attenuated to break the causal link to the confession."

The government maintains that Lynch was arrested only after the officers discovered crack cocaine, in plain view, behind the driver's seat of the minivan Lynch was seated in. Furthermore, the government submits that, if Lynch was briefly detained prior to his arrest, his pre-arrest detention was valid under *Terry v. Ohio*. We therefore begin our inquiry by examining the issue of whether Lynch was placed under arrest prior to discovery of the drugs.

As this Court has noted, "The line between a valid investigatory stop and an arrest requiring probable cause is a fine one." *United States v. Hanson*, 801 F.2d 757, 763 (5th Cir. 1986). We have also observed, however, that "drawn guns and handcuffs do not necessarily convert a detention into an arrest." *United States v. Campbell*, 178 F.3d 345, 349 (5th Cir. 1999). Whether a detention is an arrest or merely a *Terry*-stop depends on the "reasonableness" of the intrusion under all the facts. *United States v. Martinez*, 808 F.2d 1050, 1053 (5th Cir. 1987).

The record shows that Lynch was forced to kneel beside the vehicle in which he was found for a short period of time; during this brief interval, he was not handcuffed or otherwise

-4-

restrained. Officer Matlock's testimony indicates that Tanner's arrest took a matter of seconds and that, after quickly concluding Tanner's arrest, Matlock immediately proceeded to the van, observed the cocaine, and issued an order leading to Lynch's arrest. Given the facts surrounding the events, neither the duration of Lynch's detention nor the means employed to effectuate it were unreasonable. Accordingly, Lynch was not placed under arrest prior to the discovery of the crack cocaine. *See Martinez*, 808 F.2d at 1053.

Given the evidence presented at the suppression hearing, the district court did not clearly err in its factual findings relating to the issue of whether probable cause for the arrest of Lynch existed. Prior to arresting Lynch, police officers observed Lynch making suspicious motions in the direction of the backseat of the vehicle. The officers later discovered crack cocaine behind the driver's seat. Such observations provided probable cause for Lynch's subsequent arrest. *See United States v. Ramirez*, 145 F.3d 345, 352 (5th Cir. 1998)("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense").

As Lynch has failed to show that his arrest was unlawful, there is no need to consider his argument that his statement regarding ownership of the shotgun was tainted by his illegal arrest.

III.

For the foregoing reasons the judgment of the district court is AFFIRMED.

-5-