2012 COA 213

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Sergey Genidievich NOVITSKIY, Defendant–Appellant.**

**No. 10CA2023.**

Colorado Court of Appeals, Div. III.

Dec. 6, 2012.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Sarah A. Kellogg, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge DAILEY.

¶ 1 Defendant, Sergey Genidievich Novitskiy, appeals the order, entered on remand from this court, denying his motion to suppress evidence and leaving intact the judgments of conviction entered on jury verdicts finding him guilty of forgery (two counts) and possession of a forged instrument. We affirm.

## I. Background

¶ 2 Police were dispatched to a convenience store to investigate a report of a person passing a counterfeit $20 bill. Upon arrival, the police contacted the store's assistant manager, who related that defendant (who was in the store) "handed [him] a fake $20," which the assistant manager later realized "was fake." The officer walked over to defendant and ordered to him to produce any money he had on him. When defendant emptied his pockets, the police found additional counterfeit bills.

¶ 3 Prior to trial, defendant filed a motion to suppress the counterfeit money found in his pocket as the fruits of an illegal search. However, the trial court deemed the motion waived when defendant failed to appear for the suppression hearing. After he was convicted in a jury trial, defendant appealed, arguing, inter alia, that the court erred in deeming his motion to suppress waived. Agreeing with defendant, a division of this court remanded the case to the trial court for a hearing on the merits of his suppression motion. *People v. Novitskiy*, (Colo.App. No. 07CA 1453, Aug. 6, 2009) (not published pursuant to C.A.R. 35(f)).

¶ 4 At the hearing on the suppression motion, defendant argued that, by requiring him to empty his pockets when they had no reason to believe he was armed or dangerous, the police exceeded the permissible scope of a search incident to an investigatory detention; thus, the search could only be justified as a search incident to a lawful arrest.[1] Defendant further argued that the search that produced the counterfeit bills was illegal be-

---

1. *See People v. Cagle*, 688 P.2d 718, 722 (Colo. 1984) ("Where an officer conducts an investigatory stop, an accompanying search ... is permissible solely for the purpose of discovering weapons."); *see also People v. Tottenhoff*, 691 P.2d 340, 344 (Colo.1984) (full search of the person is permissible upon lawful arrest based on probable cause).

cause, at the time of the search, the officer did not have probable cause to arrest him.[2] In this regard, defendant asserted that

> there was no suggestion that the [assistant manager] had any idea what was fake and what was not fake, [the officer] didn't take the time to look at [the] bills, and ... that based on the testimony [at the hearing], what [the officer] ha[d] is [only what the assistant manager told her]: "That guy gave me a fake 20."

¶ 5 The trial court denied defendant's motion to suppress the evidence, finding that, even though "the [officer] did not see what the [assistant manager] had determined was a fake $20 bill before [the officer] contacted [defendant]," the source and nature of the information relayed to the officer was sufficient to support a finding of probable cause to arrest.

## II. Analysis

¶ 6 Defendant contends that, because the officer did not have probable cause to arrest him, the seizure of the counterfeit bills found in his pockets could not be justified as the product of a search incident to a lawful arrest. Because we disagree with defendant's premise, we also disagree with his conclusion.

¶ 7 When reviewing a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent evidence in the record. However, we review de novo the trial court's application of the law. *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo.2011). Ultimately, whether probable cause existed to support a warrantless arrest is a question of law, *id.*, which, again, we review de novo. *People v. Robinson*, 226 P.3d 1145, 1149 (Colo.App.2009).

¶ 8 "Probable cause for an arrest exists when there is a fair probability that the defendant has committed, is committing, or is about to commit a crime." *People v. Brown*, 217 P.3d 1252, 1256 (Colo.2009). As used in this context, however, a "fair probability" is not the equivalent of a "mathematical probability"; "[r]ather, probable cause must be equated with reasonable grounds." *People v. Pate*, 705 P.2d 519, 521–22 (Colo.1985); *see People v. King*, 16 P.3d 807, 813 (Colo.2001) ("Probable cause is not measured by a ' "more likely true than false" level of certitude but by a common-sense, nontechnical standard of reasonable cause to believe....' ") (quoting *People v. Ratcliff*, 778 P.2d 1371, 1375 (Colo.1989)); *People v. McCoy*, 870 P.2d. 1231, 1235 (Colo.1994) ("The probable cause standard ... is to be measured by reasonableness, not mathematical probability.").[3]

¶ 9 "In determining whether there is probable cause to arrest, the totality of facts and circumstances known to the officer at the time of the arrest must be considered." *McCoy*, 870 P.2d at 1235 (quoting *People v. Diaz*, 793 P.2d 1181, 1183 (Colo.1990)); *see also Castaneda*, 249 P.3d at 1122 (probable cause is "evaluated by considering the totality of the circumstances at the time of the arrest").

¶ 10 Where, as here, an officer bases his or her action upon information received from another person, an "[a]nalysis of the totality of the circumstances includes consideration of the informant's veracity or reliability and his or her basis of knowledge."

---

**2.** Defendant did not, for good reason, contend that the search was illegal because it was conducted before he was placed under arrest by the officer. *See generally* Joseph G. Cook, 2 *Constitutional Rights of the Accused* § 4:50 (3d ed.) ("Numerous decisions by lower courts indicate that a search preceding an arrest is permissible if the two are substantially contemporaneous and if it is clear that the officer had probable cause to arrest prior to the search."); *accord People v. Barrientos*, 956 P.2d 634, 636 (Colo.App. 1997)("[T]he fact that [the] defendant was not under arrest at the time of the search is not determinative. When an officer is entitled to make an arrest on the basis of information then available to the officer, there is nothing unreasonable in the officer's conducting a search before, rather than after, the actual arrest.").

**3.** Because the probable cause standard is gauged in terms of "probabilities similar to the factual and practical questions of everyday life upon which reasonable and prudent persons act," *People v. Flowers*, 128 P.3d 285, 287 (Colo.App.2005) (quoting *People v. MacCallum*, 925 P.2d 758, 762 (Colo.1996)), it "is incapable of precise definition or quantification into percentages." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003).

*People v. Hoffman*, 293 P.3d 1, —— (Colo. App.2010), *rev'd on other grounds*, 2012 CO 66; *see also People v. Polander*, 41 P.3d 698, 702 (Colo.2001) ("[b]oth the truthfulness of the person providing . . . information [to the police] and the way in which he [or she] acquired the information have long been considered important factors" in making a probable cause assessment).

¶ 11 Ordinarily, "when an identified eyewitness to a crime gives information to police, that information is considered sufficiently reliable to support a probable cause determination." *People v. Valencia*, 257 P.3d 1203, 1208 (Colo.App.2011); *see Pate*, 705 P.2d at 521 ("information . . . received from . . . a citizen informer [is] presumed to be reliable and trustworthy").

¶ 12 "As for 'basis of knowledge,' . . . it is generally not a major problem as to the so-called citizen-informer," particularly where the citizen-informer is an eyewitness to the purported crime. 2 Wayne R. La-Fave, *Criminal Procedure* § 3.3(d) (2007). However, "some explanation regarding the basis of knowledge of the victim or witness is clearly called for when it appears the purported knowledge could have been obtained only by the utilization of some expertise beyond that of the typical layman." *Id.*

¶ 13 Defendant asserts that (1) absent an independent verification of the counterfeit nature of the bill given to the assistant manager, the investigating officer needed to ascertain the basis of the assistant manager's ability to determine that the bill was fake before she could have probable cause for an arrest; and (2) because, prior to the arrest, the investigating officer made no inquiry about the assistant manager's knowledge, training, or experience with counterfeit money, probable cause for the arrest was necessarily lacking. We are not persuaded.

¶ 14 In some instances, the "basis of an informant's knowledge may be inferred from the circumstances." *People v. Reid*, 27 A.D.3d 297, 812 N.Y.S.2d 472, 473 (N.Y.App. Div.2006). In our view, this is one of those instances.

¶ 15 In this regard, we find instructive the decision of the United States Court of Ap-

peals for the Fifth Circuit in *United States v. Hernandez*, 825 F.2d 846 (5th Cir.1987). In that case, a person working at a carnival as a novelties vendor refused to change a $20 bill because he thought the bill was counterfeit. He returned the bill to those who had proffered it to him and reported the incident to the police. The police contacted the suspected counterfeiters and asked them to produce any money they had. When one suspect twice refused to produce a paper from his pants pocket, the officer reached into the pocket and retrieved a black and white mimeograph copy of a $20 bill.

¶ 16 The district court determined that the officers had probable cause to arrest the suspect before they reached into his pocket and retrieved the copy of the $20 bill. On appeal, the suspect argued that probable cause for the arrest was lacking, in part because the government had not shown that the vendor possessed expertise in recognizing a bill as counterfeit. The Fifth Circuit Court of Appeals rejected this argument, reasoning:

> [I]t was known to the police that [the citizen-informer] was a carnival vendor who necessarily dealt with currency. Further, by immediately rejecting the bill once proffered and promptly notifying the police, [the citizen-informer] displayed confidence in his own ability to recognize the instant bill as counterfeit. [The vendor] further conveyed this confidence by reporting to the police that the proffered paper was an "obviously counterfeit twenty dollar bill." We uphold the district court's determination that the circumstances would justify a reasonable law enforcement officer in believing there was a fair probability that a counterfeit note had been passed.

*Id.* at 849–50 (footnote omitted).

¶ 17 As in *Hernandez*, the investigating officer in the present case could reasonably infer that, because of his occupation, the assistant manager possessed sufficient knowledge and ability to recognize counterfeit currency. Because a business like the convenience store here suffers a financial loss when an employee accepts counterfeit bills,

its assistant manager could be expected to watch for counterfeit bills and know how to detect them. *See id.; see also Reid,* 812 N.Y.S.2d at 473 ("It was reasonable for the officer to conclude that the clerk was sufficiently familiar with counterfeit money to make a valid complaint....").

¶ 18 Further, as in *Hernandez,* the assistant manager promptly recognized and reported the counterfeit bill after defendant had given it to him. This is evident from the fact that, following his transaction with the assistant manager, defendant had had time only to go outside to pump gas and return to the store to pay for it before the police arrived.[4]

¶ 19 Under the circumstances, we conclude that, based solely on the assistant manager's report, the officer had probable cause to arrest defendant and to search him, incident to a lawful arrest, for additional counterfeit money.

¶ 20 The court's order is affirmed.

Judge RICHMAN and Judge NEY * concur.

---

4. Defendant had bought a lottery ticket and one other item from the assistant manager and paid for them with the fake $20. He then went outside to pump gas before returning to pay for it.

